66919. REVIS v. FORSYTH COUNTY HOSPITAL AUTHORITY.

SOGNIER, Judge.

Appellant Robert Paul Revis obtained a verdict on September 16, 1982 of $3,799,211 in a medical malpractice suit brought against Everett Lee, M.D., Brookwood Health Services, Inc., Brookwood Management Services, Inc. and Forsyth County Hospital Authority. A motion for judgment notwithstanding the verdict or, alternately, for new trial was filed by all the defending parties. However, on December 29, 1982, Revis covenanted with all defendants except Forsyth County Hospital Authority (appellee) not to enforce or otherwise collect upon

the September 16, 1982 judgment in consideration for $2,709,534 and the abandonment of any further litigation by those defendants. Thereafter, the Hospital Authority, the sole appellee here, filed a motion for an order calling for the satisfaction and cancellation of judgment and execution of the September 16, 1982 judgment based on the purported operation of the above covenant as a release. The trial court granted the Hospital Authority's motion and Revis appeals.

Appellant contends that the trial court erred in ordering that the September 16th judgment in appellant's favor be deemed satisfied and cancelled in full. The covenant granted by appellant to the other defendants was styled "COVENANT NOT TO ENFORCE OR OTHERWISE COLLECT JUDGMENT" and provided: "[Appellant and his attorney] do hereby covenant and agree never to enforce or collect or attempt to enforce or collect against [all defendants except appellee] that certain judgment dated September 16, 1982 and entered September 16, 1982, . . . . It is the intention of the parties to this Covenant Not to Enforce or Otherwise Collect Judgment that the foregoing payments by [defendants] will constitute the end of litigation between the parties to this agreement and the termination of all financial obligations owed [appellant] by [defendants] by reason of said judgment." The covenant provided that it would not serve to nullify or cancel an indemnity agreement between appellee and certain of the defendants, providing specifically that the indemnity agreement would not be enforced until or unless appellant recovered the amount owing on the judgment. The covenant further provided that it *"is not a release and is not intended by the parties to be a release. It is [in] the nature of a covenant not to sue and the parties intend to preserve the right of [appellant and his attorney] to pursue their claim and judgment against [appellee]."* (Emphasis supplied.)

It is a well-established principle in law that a release as to one joint tortfeasor is a release to all. *Grizzard v. Davis,* 131 Ga. App. 577, 581 (206 SE2d 853) (1974), *City of Buford v. Hosch,* 104 Ga. App. 615 (122 SE2d 287) (1961). The reason behind this principle is that although plaintiff was damaged by the joint act of two persons, there is but one injury and a plaintiff is entitled to only one full satisfaction for that injury. There can be no double recovery of the amount of damage which one has sustained. *Donaldson v. Carmichael,* 102 Ga. 40, 42 (29 SE 135) (1897).

A covenant not to sue, however, has been distinguished from a release in a line of cases that focuses on the intent of the parties as the primary consideration in determining the nature of the instrument. *Harmon v. Givens,* 88 Ga. App. 629, 634 (77 SE2d 223) (1953); *Henderson v. Garbutt,* 121 Ga. App. 291, 292 (173 SE2d 445) (1970). Because satisfaction as to one party need not necessarily be a "full

satisfaction" of the claim, this court has refused to release non-covenanting joint tortfeasors when the intention of the parties is that there is no full satisfaction of the claim. *Smallwood v. Bickers*, 139 Ga. App. 720, 724 (229 SE2d 525) (1976).

However, OCGA § 13-4-81 (former Ga. Code Ann. § 20-909) provides that a covenant not to sue is the equivalent of a release. This court in *Moore v. Smith*, 78 Ga. App. 49 (50 SE2d 219) (1948) in interpreting the statute noted that it does not say that a covenant not to sue *is* a release, but rather that it can *operate* as a release as to the parties involved in the covenant. The court in *Moore* pointed out that the common law (from which the precise language of the statute was taken) did not treat a covenant not to sue as a release where the covenant involved a debt on which the covenantee was not liable alone, but was liable jointly or severally with others. Thus, the *Moore* court concluded that a covenant not to sue could be restricted to the parties to the covenant while still allowing the plaintiff to retain his rights against the remaining defendants. By means of this interpretation of the statute, prospective parties to a suit have been afforded a means of contracting away potential legal matters which is both economical and non-prejudicial to the rights of all the parties.

In the instant case the trial court held that the distinction between a release and a covenant not to sue does not apply to post-judgment agreements in which a plaintiff for a valuable consideration covenants never to enforce the judgment which he was awarded. The trial court's holding was based upon its interpretation of OCGA § 9-13-74, which provides: "An agreement for a valuable consideration never to enforce a judgment or execution shall release the judgment or execution." However, as did the court in *Moore*, we find that the statute before us, OCGA § 9-13-74, does not mandate that all agreements which concern the enforcement of judgments must necessarily be construed as releases. Like the *Moore* court we reach this conclusion not merely because OCGA § 9-13-74 does *not* say "a covenant not to enforce *is* a release," but also because an agreement under OCGA § 9-13-74 is an agreement "*never* to enforce a judgment. . . ." (Emphasis supplied.) The use of the word "never" indicates an intent to encompass the entirety of the judgment as applied to everyone against whom it could be enforced. The language of the statute therefore does not address a situation in which a judgment could be enforced jointly or severally against more than one party and the covenant not to enforce involves fewer than all of those parties.

The covenant before this court is not a covenant "never" to enforce the September 16th judgment. It specifically provides that the judgment will be enforced as to that amount owed appellant by appellee. There was no intent to release and discharge appellee by operation of the covenant nor was the amount received from the other

defendants intended to constitute a full satisfaction of the judgment debt so as to release appellee from liability under the judgment. These factors, whether the plaintiff has received full satisfaction and whether the parties intended the result of their negotiations to be a complete freedom from further liability for all the tortfeasors, should be paramount in determining the effect of any agreement purported to operate as a release and should be inquired into whenever the problem arises in a case. *Guest v. Mitchell*, 156 Ga. App. 815, 816 (fn. 1) (275 SE2d 799) (1980).

Our interpretation of OCGA § 9-13-74 in no way prejudices the rights of non-covenanting defendants to seek contribution from covenanting defendants, nor does appellee show how its particular interests would be harmed by application of this interpretation to the covenant here.

Appellee argues instead that case law has interpreted all covenants not to enforce a judgment to be the same as releases, thereby having the effect of releasing all other joint tortfeasors regardless of the intent of the parties. We do not agree with appellee's interpretation of these other decisions and find that they are all distinguishable from the case before us.

Appellee cites *Powell v. Davis*, 60 Ga. 70 (1878), an 1878 case in which a plaintiff with a $1,551.90 Tennessee judgment agreed to "release and discharge" one co-defendant in consideration of $500. The agreement provided that the $500 would be refunded to the covenanting defendant once the other defendant had paid the judgment but that the $500 was neither a credit nor a payment on the judgment owed by the other defendant. The court in *Powell* acknowledged that a covenant not to sue could preserve the right of further recourse according to the intention of the parties, but "where the release was so positive as that it could not be so *construed* [as a covenant not to sue], it was an absolute discharge, . . ." *Powell* at 73. *Powell's* headnote stated: "Held, that such a contract being an *absolute release* of D. [the covenanting joint defendant], the judgment cannot be enforced against P., the other joint defendant, even though it may have been further agreed between those two parties, that said release was not to affect the collection of said judgment out of P., he not being a party, or consenting thereto." *Powell* at 70 (1). (Emphasis supplied.) *Powell* thus stands for the proposition that where an agreement is in fact an absolute release, the intent of the parties, when contrary to the terms of a plain and unambiguous release, will not be given effect. Thus, we find *Powell* distinguishable from the instant case in which the express language of the covenant shows that it is not an absolute release and therefore the intention of the parties will be given effect.

Appellee next relies upon *Warthen v. Melton*, 132 Ga. 113 (63 SE 832) (1908), a case which involved a discharge of a judgment by one

co-defendant prior to the institution of a garnishment action by appellant against a debtor of appellee, another co-defendant. Appellee claimed that the payment and release granted by appellant to the other co-defendant constituted a full discharge and payment of the original fi. fa. The lower court charged the jury that if they found appellant had accepted money from the second co-defendant and "agreed to relieve him and did release him" that appellee would be released and the fi. fa. discharged. *Warthen*, at 117 (4). Nothing in *Warthen's* recitation of facts indicates what were the terms of the release given the second co-defendant (such as whether the second co-defendant's payment did constitute the allegedly absolute release) or what were the intentions of the parties as to appellee. Hence, we cannot hold that the Supreme Court's affirmance of the vague language in the lower court's charge is controlling in the instant case where the language of the agreement clearly sets out the intent of the parties as to all of these matters.

In the more recent case of *Weems v. Freeman*, 234 Ga. 575 (216 SE2d 774) (1975), an oral agreement made prior to judgment provided that two of the defendants would each pay plaintiff $15,000 and remain in the suit through judgment, but regardless of the amount of the judgment rendered against all defendants the plaintiff would not require the covenanting defendants to make any further payments. The *Weems* court, in construing the oral agreement which the parties had titled a "covenant not to sue," held: "Where there is a covenant not to sue, it is important that the parties to the covenant not be sued in fact or in fiction after the agreement has been executed. Otherwise, the substance of the agreement will be construed to be a release from judgment and will act to release all joint tortfeasors." *Weems*, supra, at 577. In interpreting *Weems*, this court in *Bevill v. North Bros. Co.*, 168 Ga. App. 97, 100 (308 SE2d 215) (1983) stated: "*Weems v. Freeman* does not stand for the proposition that an otherwise valid covenant not to sue *automatically* becomes a general release in the mere event that a suit is subsequently instituted jointly against the covenantees and others. It is clear that *Weems v. Freeman* stands only for the proposition that, in certain circumstances, the law will deem what is purported to be a covenant not to sue to be, in effect, an agreement not to enforce a judgment pursuant to OCGA § 9-13-74." The parties in *Weems* did not contemplate that their agreement would be construed as a covenant never to enforce a judgment and therefore failed in their oral agreement to take the necessary steps to prevent their covenant from falling within the purview of OCGA § 9-13-74 (former Ga. Code Ann. § 39-604). However, the lack of comparable facts to *Weems* in the instant case, and the taking of steps by the parties to the covenant before us to avoid the operation of OCGA § 9-13-74, distinguish this case from the decision in *Weems*.

This court's holding in *Philips Audio &c. Corp. v. Bateman*, 160 Ga. App. 12 (285 SE2d 747) (1981), another case relied upon by appellee, is clearly distinguishable on its facts. In *Philips*, the plaintiff agreed by means of a bankruptcy court order to renounce all right to any execution of a judgment in a pending state suit. The plaintiff admitted that its purpose in consenting to the order was to maintain jurisdiction over a solvent co-defendant. The court refused to allow the use of such fraudulent methods to obtain jurisdiction and found that the release as to the bankrupt co-defendant was a release as to the solvent co-defendant. The language in *Philips* that "[t]he law of this state does not allow a plaintiff fully to settle with (release) one joint obligor and agree not to enforce a judgment against him, while reserving a right to pursue others," *Philips* at 14, does not apply to the instant case where there was no full satisfaction of the judgment. Any such *full* satisfaction of the judgment would necessarily constitute a release, since a plaintiff is not entitled to double recovery for one injury. *Donaldson*, supra.

However, appellee cites *Philips* for its endorsement of an interpretation of *Weems* found in Fulmer v. Ward Machinery Co., 423 FSupp. 186, 188 (1976), and argues that *Philips* thus stands for the proposition that in such a covenant as we have here, appellant's stated intent not to release appellee is of no legal effect. Both Fulmer and its Georgia authority, *Donaldson*, supra, involved instruments found by those courts to constitute full releases of the plaintiffs' claims. The *Donaldson* court, in dictum and without citing any authority, commented that a release under seal, which acknowledged *full satisfaction* for the tort while reserving a claim against others, would enure to the benefit of all defendants so that the reservation was inoperative. This statement, made in context with the *Donaldson* court's discussion of the evils of double recovery, is not applicable to the case here where there was no full satisfaction and no absolute release. Thus, neither Fulmer nor its authority provide any support for appellee's proposition.

Appellee finally calls to our attention the discussion of *Weems*, supra, in *Bevill v. North Bros. Co.*, supra. *Bevill* involved the construction of a covenant not to sue and *Bevill*'s discussion of *Weems* was not to approve it but on the contrary to distinguish it. *Bevill* also mentions the "inconsistency and subterfuge" evidenced by the facts in *Weems. Bevill* at 101.

It is the presence of just such "inconsistency and subterfuge" which gave rise to the holdings in *Weems* and the other cases. It is in marked contrast to these other cases that we look at the facts before this court now. We have an appellant who was awarded 3.7 million dollars by a jury after two and one-half years of prolonged litigation. We have a carefully worded covenant not to enforce the judgment in

which appellant sought to promptly obtain a portion of that judgment without further appellate litigation. This straightforward covenant did not represent an attempt to fraudulently obtain jurisdiction or to discredit the veracity of the record. It was not made in full satisfaction of the September 16th judgment, nor did it purport to release all the joint tortfeasors from liability under the judgment. Instead, the parties to the covenant sought to preserve the rights of all the parties in equity and good conscience while aiding in the economical and expeditious disposition of litigation.

Because we find nothing in OCGA § 9-13-74 or Georgia case law which requires us to follow the trial court's interpretation of these authorities, we therefore reverse the trial court's order granting appellee's motion to satisfy and cancel the judgment and execution of the September 16, 1982 judgment.

*Judgment reversed. Quillian, P. J., and Pope, J., concur.*

DECIDED MARCH 5, 1984 —
REHEARING DENIED MARCH 19, 1984 — 

*James E. Butler, Jr.,* for appellant.
*Paul M. Hawkins, Larry H. Boling, William H. Major III,* for appellee.