A92A0058. CRIM et al. v. JONES.
(419 SE2d 130)

BEASLEY, Judge.

Appellants Crim and Pruitt (collectively "Crim") appeal the grant of summary judgment to Jones in this action for damages for breach of a commercial lease agreement.

Crim leased space in a shopping center to Beaumont, who assigned the lease to Jones. Crim signed the assignment and expressly agreed to its terms with the proviso that Beaumont remain obligated "for the full performance of the provisions of the lease."

Crim sued Beaumont and Jones for breach of contract, alleging that "despite repeated demands . . . defendants stopped making the

monthly rental payments provided for in the lease, and thereafter abandoned the premises." About a week prior to the scheduled trial date, Crim and Beaumont entered into a "Consent Judgment," which provided in pertinent part that "Beaumont is liable and indebted, as a joint obligor with Jones, to Crim, in the amount of . . . $30,000, said amount representing the amount of principal and interest presently due and owing to Crim under the lease." Simultaneously, Crim and Beaumont executed a "Consent Agreement," pursuant to which Beaumont would pay Crim $6,000, which "shall extinguish any obligations between Crim and Beaumont relative to the subject matter of the judgment . . . [of] $30,000. . . . Should Beaumont fail to satisfy any of its requirements under this Agreement, . . . this Agreement becomes null and void and Beaumont shall remain indebted to Crim in the amount of . . . $30,000, in accordance with the Judgment. . . ." The document further specified: "Beaumont makes no representations to represent the co-defendant Jack W. Jones . . . said Agreement being between Crim and Beaumont solely, and is in no way intended to relieve any obligation Jones may have to Crim." Both the Consent Judgment and Consent Agreement were made an order of the Court.

After the case was called for trial and a jury struck, Jones orally moved for and was granted summary judgment on the ground that the Consent Agreement between Crim and Beaumont had the effect of releasing him, a joint obligor, from any obligation under the lease pursuant to OCGA § 13-4-80.

Appellants contend that the trial court erred because their agreement with Beaumont was not a release and therefore not governed by OCGA § 13-4-80. It provides: "A release may result by operation of law. When a creditor releases another who is bound jointly with or primarily to a debtor or accepts from a debtor a higher security for the same debt, not intended to be collateral thereto, a release results by operation of law."

Appellants argue that the Consent Agreement is actually a covenant not to sue, applicable only to Beaumont, rather than a release applicable to both defendants.[1] " 'The fundamental rule, the rule which swallows up almost all others in construing a paper, is to give it that meaning which will best carry into effect the intent of the parties. This is the object of rules of interpretation, to discover the true intent of the parties, and in doing this we are to take the whole of

---

[1] The distinction between a release and covenant not to sue in the area of torts was obliterated by the decision in *Posey v. Medical Center-West*, 257 Ga. 55 (354 SE2d 417) (1987). The rule in *Posey* was recently modified in *Lackey v. McDowell*, 262 Ga. 185 (415 SE2d 902) (1992), in which the Court held: "Only those parties *named* in the release will be discharged by that instrument." (Emphasis in original.) Id. at 186.

(the instrument) together, and to consider this with the surrounding circumstances.' [Cits.]" *Smallwood  v. Bickers,* 139 Ga. App. 720, 723 (229 SE2d 525) (1976). "[W]hether the plaintiff has received full satisfaction and whether the parties intended the result of their negotiations to be a complete freedom from further liability for all the [defendants], should be paramount in determining the effect of any agreement purported to operate as a release and should be inquired into whenever the problem arises in a case." *Revis v. Forsyth County Hosp. Auth.,* 170 Ga. App. 366, 369 (317 SE2d 237) (1984). " ' "A covenant not to sue is not a release, but it is to be distinguished from a release, and the distinction, although technical or artificial, is clear. The difference is one of intent and grows out of the construction placed on the terms of the instrument, since a covenant not to sue is not a present abandonment or relinquishment of a right or claim but merely an agreement not to enforce an existing cause of action, and, although it may operate as a release between the parties to the agreements, it will not release a claim agains joint obligors or joint tortfeasors." [Cit.]' [Cit.]" *Georgia R. Bank &c. Co. v. Griffith,* 176 Ga. App. 198, 199 (1) (335 SE2d 417) (1985).

The Consent Agreement at issue was not intended as a release. Crim did not obtain full satisfaction from Beaumont and expressly retained the right to proceed against defendant Jones. *Revis,* supra at 369. Compare *J & S Properties v. Sterling,* 192 Ga. App. 181 (384 SE2d 194) (1989) (where plaintiff accepted the settlement as full satisfaction of the debt and the document expressed no intention to pursue the joint obligors, a release resulted by operation of law under OCGA § 13-3-80). *Weems v. Freeman,* 234 Ga. 575 (216 SE2d 774) (1975), does not compel a contrary conclusion. That case dealt with the common law distinction between a release and a covenant not to sue and their relative effects in the area of tort law, a distinction no longer significant in light of *Posey v. Medical Center-West,* 257 Ga. 55 (354 SE2d 417) (1987). However, consistent with our ruling here, *Weems* recognized that a release does not result "[w]here the right to sue has been reserved and the plaintiff has not received full satisfaction. . . ." Id. at 576.

While a covenant not to sue can be made lis pendens, *Register v. Andris,* 83 Ga. App. 632 (64 SE2d 196) (1951), the instrument under consideration is, in legal effect, an agreement between Crim and Beaumont not to enforce the judgment. "[The] distinction between a release and covenant not to sue also applies to agreements not to enforce a judgment." *Griffith,* supra at 199. An agreement on the part of one co-obligor not to enforce a judgment does not necessarily have the effect of releasing all other co-obligors where the parties do not so intend. *Griffith,* supra; *Revis,* supra at 369. Clearly, the parties did not intend to release Jones; the agreement expressly entitled Crim to

proceed against him for the amount of the judgment unsatisfied by Beaumont's contribution.

Appellee further submits that a release by agreement was reached pursuant to OCGA § 9-13-74, which provides: "An agreement for a valuable consideration never to enforce a judgment or execution shall release the judgment or execution." "The use of the word 'never' indicates an intent to encompass the entirety of the judgment as applied to everyone against whom it could be enforced. The language of the statute therefore does not address a situation in which a judgment could be enforced jointly or severally against more than one party and the covenant not to enforce involves fewer than all of those parties." *Revis,* supra at 368. As in *Revis,* the instrument under consideration "is not a covenant 'never' to enforce the . . . judgment. It specifically provides that the judgment will be enforced as to that amount owed appellant[s] by appellee. There was no intent to release and discharge appellee by operation of the covenant nor was the amount received from the other defendant[] intended to constitute a full satisfaction of the judgment debt so as to release appellee from liability under the judgment." Id. at 368. The fact that the instrument was not intended as an agreement "never" to enforce the judgment is expressed in the language of the document itself. It contemplates that the full amount of the judgment would be sought from Beaumont in the event she failed to comply with the obligations under the agreement. "[T]he taking of steps by the parties to the covenant before us to avoid the operation of OCGA § 9-13-74, distinguish[es] this case from the decision in *Weems*[, supra]." *Revis,* supra at 370.

The trial court erred in awarding summary judgment to appellee based on the theories urged.

*Judgment reversed. Birdsong, P. J., and Andrews, J., concur.*

DECIDED MAY 20, 1992.

*Donald P. Geary,* for appellants.
*Meadows & Schrade, Richard D. Schrade, Jr.,* for appellee.

