## A92A1950. ROBERT HALF OF ATLANTA, INC.
## v. DIVERSITECH CORPORATION.
### (430 SE2d 800)

BEASLEY, Presiding Judge.

Robert Half of Atlanta, Inc., a personnel agency, sued Diversitech Corporation for a fee pursuant to an agreement for placement of an employee. Both parties moved for summary judgment. Robert Half contends it fulfilled Diversitech's requirements as to employee qualifications. Diversitech contends Robert Half failed to comply with an implied duty to provide a drug-free employee or breached an implied warranty of fitness. The court denied summary judgment to Robert Half, which is affirmed, and granted summary judgment to Diversitech, which is reversed.

It has not been established as a matter of law by movant Diversitech that under the terms of its contract with Robert Half, the latter's fee would not be earned if the person placed tested positive for drug use.

There is in the record no written contract between the parties. However, it is undisputed that Diversitech contacted the personnel agency, seeking someone to be a manager of information systems and supervisor of data processing, with UNIX background, several years' experience, a college degree, and experience with different accounting systems. From the record thus far developed, apparently nothing was said about drug testing or about conditional or probationary employment. Diversitech states, in response to interrogatory, that it did not inform the agency that a physical exam and drug test would be "conditions precedent" to employment. The evidence is in dispute with respect to the extent of the discussion of fees and whether the Fee Schedule was provided to Diversitech right after the phone conversation.

A few days later, Robert Half faxed a letter to Diversitech that it had found Ms. Walker, a person with the qualifications listed by Diversitech. There is evidence that Walker was thereafter interviewed twice by Diversitech, was offered a position, accepted it and reported to Diversitech. On the other hand, there is also evidence that the offer was only "contingent upon passing a pre-employment physical examination as it pertains to the requirements of the job," as stated in the application form signed by Walker several days after she reported to Diversitech. There is no evidence that Robert Half was given a copy of this form or knew Diversitech's procedure. Diversitech, according to its controller's affidavit, "terminated her employment" and "fired" her about a month after she reported, after the drug test taken in the interim.

The agency's Fee Schedule, sent with the invoice the day Walker was to report to Diversitech, states: "Unless otherwise previously

agreed in writing signed by an officer of [the agency], the starting of employment of the employee referred by us to you shall constitute acceptance of terms set forth herein. Fees will be due us and the terms set forth herein will apply as to any applicant referred by us to you if you employ the applicant at any time within one year from the date of the referral." It also states that fees are due "on or before ten (10) days from the date the Employee starts work," and a pro rata guarantee is set out. As stated earlier, the Fee Schedule may also have been sent before Walker was presented.

Whether Walker became employed by Diversitech and started employment or not within the meaning of the placement contract is a question of fact, about which there is evidence both ways. There is evidence that Diversitech did not employ Walker, because she failed the drug test. There is also evidence that it did employ her, although on a probationary basis. The fact that Diversitech's "normal procedure," followed in this case, was to have office personnel drug-tested after they reported for work indicates that it did not expect or intend the agency to accomplish this.

The intent of the parties is foremost in the construction of contracts. OCGA § 13-2-3. "There are three steps in the process of contract construction. The trial court must first decide whether the contract language is ambiguous; if it is ambiguous, the trial court must then apply the applicable rules of construction (OCGA § 13-2-2); if after doing so the trial court determines that an ambiguity still remains, the jury must then resolve the ambiguity." *Travelers Ins. Co. v. Blakey*, 180 Ga. App. 520 (349 SE2d 474) (1986). "Ambiguity in a contract may be defined as duplicity, indistinctness, and uncertainty of meaning or expression. [Cit.]" *Travelers Indem. Co. v. A. M. Pullen & Co.*, 161 Ga. App. 784, 789 (6) (289 SE2d 792) (1982).

It has not been established what the parties agreed to with respect to when or under what conditions the fee would become earned. If the Fee Schedule was intended to set this, the meaning of "starting of employment" is ambiguous and cannot be resolved without resort to parol evidence, which is in dispute. Correspondence between parties is admissible if it clarifies or tends to explain intent, and meaning placed on a contract by one party may be acquiesced in by the other party who knows of it and remains silent. *Salvatori Corp. v. Rubin*, 159 Ga. App. 369, 373 (3) (283 SE2d 326) (1981).

The evidence in this case does not establish as a matter of law that Diversitech owes the placement fee. Neither does the evidence establish, in Robert Half's favor, that Diversitech owes the fee. The question is whether the agency's fee was contingent on the placed person's passing the physical exam and drug test administered by the employer.

*Judgment affirmed in part and reversed in part. Pope, C. J., and*

*Cooper, J., concur. Justice George H. Carley concurs. Blackburn, J., concurs in the judgment only. McMurray, P. J., Birdsong, P. J., Andrews and Johnson, JJ., dissent.*

BIRDSONG, Presiding Judge, dissenting.

I respectfully dissent. I would affirm the trial court's grant of summary judgment to Diversitech Corporation in Robert Half of Atlanta, Inc.'s suit for a fee for services pursuant to the oral agreement for placement of a "qualified" employee.

Robert Half is seeking to be paid a fee for a service which it did not perform. Diversitech's principal requirement was for an employee *qualified to manage other employees,* i.e., "of managerial quality," and with certain computer education and expertise. On September 20, 1990, Robert Half proffered a Ms. Walker as being *"right on the money."* Although the majority finds that the meaning of "starting of employment" (which fixed Robert Half's right to a fee) is ambiguous and that a question of fact exists as to whether Walker actually "started employment" with Diversitech, and as to whether the agency's fee was contingent on the placed person's passing the physical exam and drug test administered by Diversitech, it is undisputed that Diversitech's standard procedure as testified to by Diversitech required the candidate to report to Diversitech on a probationary basis and undergo a physical examination including drug tests. It is not disputed that four days after Walker reported to Diversitech, she completed a "standard application for employment," which stated: "I understand that any offer of employment is contingent upon passing a pre-employment physical examination as it pertains to the requirements of the job." Less than a month later, a drug test which proved positive for cocaine and marijuana resulted in her being released from her probationary status.

Although Diversitech did not expressly state a requirement to Robert Half of Atlanta, Inc. that the candidate be screened for illicit drug use, it cannot be disputed that inasmuch as Walker used illicit drugs she was not "of managerial quality" and was not "right on the money." Robert Half could not reasonably represent her as such unless it had made an inquiry as to possible drug use. It is prevalently known that use of illicit drugs is an overwhelming problem in society in general and is a blatant disqualification of those seeking positions to manage others in an employment setting. That such a problem might exist and the certainty that it would disqualify the person for employment in a managerial capacity are well known to any business which is in the business of placing "qualified" employees for others.

The fact that the parties did not "express" this condition as a qualification of employment is therefore not conclusive. An implied term in an agreement exists where it is reasonable and necessary to

effect the full purpose of the contract and is so clearly within the contemplation of the parties that they deemed it unnecessary to state. *Ellis v. Brookwood Park Venture*, 161 Ga. App. 242, 243 (288 SE2d 308). Naturally, an employment agency cannot warrant that a person does not use illicit drugs; this is not a thing which can be guaranteed by anybody, since one who uses illicit drugs may conceal the fact and might contrive to pass a drug test given by the agency and then indulge her habit after being placed by the agency and accepted by an employer. This is obviously why Diversitech administered its own drug test while keeping the employee on a probationary status before actually hiring her. Therefore, the fact that Diversitech administered its own drug test does not relieve the agency of a preliminary duty to inquire; that Diversitech required the candidate to apply for work on a probationary status and then undergo a drug test confirms the importance Diversitech placed on the possibility of drug abuse as a disqualification to actual employment, and confirms by conduct Diversitech's true contractual intent. See *Head v. Scanlin*, 258 Ga. 212, 214 (367 SE2d 546). It also evidences the importance which Robert Half, as a professional agency engaged in placing "qualified" employees, reasonably knew the employer placed on that possibility.

The impossibility of Robert Half's guaranteeing that a candidate does not engage in illicit drug use does not mean it had no duty even to inquire as to a matter of such blatantly profound significance to its client, and to make a reasonable effort to discover such a blatant disqualifying factor before proposing a candidate as "qualified" and "right on the money" and putting Diversitech to the trouble of engaging her on a probationary status, and before exposing Diversitech to an *implied* necessity to pay the agency's fee for an unqualified person. It cannot be disputed that Walker was *not* "qualified"; a reasonable effort by Robert Half to ascertain this fact, just as Diversitech successfully did soon after Walker's probationary period began, would have spared Diversitech any necessity of paying a fee for an employee who was not "qualified." Common sense and public policy demand the conclusion that such a blatant duty was so clearly contemplated by the parties in the circumstances of this case that they deemed it unnecessary to state. Thus, there was an implied duty on Robert Half to screen a job candidate reasonably for drug abuse before presenting a candidate as qualified, in particular, "of managerial quality."

What constitutes a reasonable effort by the agency to ascertain a job candidate's qualifications may be a question of fact in some cases, but in this case it is undisputed that although Robert Half had agreed to submit only qualified job candidates and presented Walker as "qualified," it made no effort at all to determine this fact of profound disqualifying character. It made no inquiry as to the matter whatever, and did not even ask the candidate to submit to a drug screening test

before representing her as "qualified" and "right on the money." It cannot be suggested that Robert Half provided a service for which it should be paid, as it did not provide a "qualified" candidate, and made not the slightest effort to discover the blatant negative factor which disqualified Walker for actual employment. Robert Half is not a party to the employment relationship between Walker and Diversitech; as Walker signed an application acknowledging that she was only retained on probationary status and had to undergo a drug test before actually being hired, it is not for Robert Half to assert that Walker had "started employment." To say this is a question of fact for the jury is to suggest that Robert Half can set its own conditions for employment of a candidate, and that by proposing as "qualified" a person who is never actually employed, it can entitle itself to a fee for a service which, undisputedly, it did not perform.

Whether Robert Half knew the exact nature of Walker's probationary status with Diversitech is beside the point; the point is what the exact relation was between Diversitech and Walker, and that fact has been indisputably established. Since the burden of performance in producing a "qualified" employee was upon Robert Half, and since Robert Half is seeking a fee for placement of an unqualified employee, it ill suits Robert Half to assert that Walker "started employment" when the undisputed evidence of the employer/employee relationship shows she did not.

I would affirm the grant of summary judgment to Diversitech under the facts of this case. I am authorized to state that Presiding Judge McMurray, Judge Andrews and Judge Johnson join in this dissent.

DECIDED APRIL 2, 1993.

*Bryant, Davis & Cowden, Jay G. Davis, James W. Hays*, for appellant.

*Kirwan, Goger, Chesin & Parks, John J. Goger, Larry Chesin*, for appellee.