## A93A1742. MARRET et al. v. SCOTT et al.
(441 SE2d 902)

COOPER, Judge.

This is the fourth appearance of this contract action before this court. See *Scott v. Thompson*, 193 Ga. App. 487 (388 SE2d 371) (1989), aff'd 260 Ga. 164 (393 SE2d 447); *Scott v. Thompson*, 201 Ga. App. 443 (411 SE2d 508) (1991); *Scott v. Thompson*, 202 Ga. App. 746 (415 SE2d 508) (1992). The case was initially filed against ten guarantors to enforce two promissory notes in the total principal amount of $250,000. The jury returned a verdict for plaintiffs against the ten guarantors in the principal amount plus interest and attorney fees; however, the trial court ordered a new trial based on the jury's failure to determine the guarantors' obligation under certain capital gains provisions. In the first appeal, this court affirmed the trial court's grant of a new trial on the issues of capital gains, interest and attorney fees but held that a new trial was unnecessary on the issue of

the principal amount of the notes. *Scott*, 193 Ga. App. at 488.

After receipt in the trial court of the remittitur but prior to entry of any judgment thereon, four of the ten guarantors entered into a "COVENANT NOT TO SUE AND NOT TO ENFORCE JUDG-MENT" with plaintiffs, settling the claims against them in consideration of a payment of approximately $197,000. Thereafter, the trial court certified a judgment of $250,000 as final pursuant to OCGA § 9-11-54 (b) and a writ of fieri facias was issued against all guarantors. The six non-settling guarantors then moved the court to set aside the judgment on the grounds that the order did not delineate between joint and several and proportional liability and plaintiffs' receipt of $197,000. As a consequence, the trial court entered an order, superseding its previous judgment, which established proportional liabilities as to all of the guarantors ("the November 26 judgment").

Prior to the retrial, the six non-settling guarantors moved unsuccessfully for summary judgment on the ground that the Covenant not to Sue and Not to Enforce Judgment with the four settling guarantors amounted to a release of all remaining guarantors. On the eve of retrial, the four settling guarantors were voluntarily dismissed from the action, and the case proceeded against the six remaining guarantors. The second jury returned a special verdict in favor of guarantors, finding that the agreement amounted to a novation, composition and release of their liability as to the capital gains provision, interest and attorney fees. On appeal, however, the judgment rendered on that verdict was reversed because of evidentiary errors during the trial. *Scott*, 201 Ga. App. at 445.

During the third trial, the six guarantors again argued that plaintiffs' agreement with four of the guarantors also released them. The trial court denied motions for directed verdict on this issue, and the jury returned a verdict for plaintiffs against each guarantor, apportioning liability. From the final proportional judgment entered only against the six remaining guarantors, appellants bring this appeal. Appellants are four of the six non-settling guarantors, and appellees are the original plaintiffs.

1. Appellants enumerate as error the denial of their motion for directed verdict on the issues of release, composition and novation and upon the theory that, as a matter of law, the agreement is a promise not to enforce a judgment rather than a covenant not to sue.

(a) Appellants contend that appellees' acceptance of less than the total sum owed under the notes was a composition which discharged them as co-sureties on the notes. OCGA § 10-7-20 provides in part that the "release of or compounding with one surety shall discharge a cosurety." " 'To "compound" . . . is "to compromise, to effect a composition, to obtain discharge from a debt by the payment of a smaller sum." ' [Cit.]" *Spencer v. Southtrust Bank &c.*, 208 Ga. App. 538, 539

(430 SE2d 853) (1993). However, in this case, each guarantor is a *limited* surety, liable only for a proportionate share of the underlying debt. Co-sureties within the meaning of OCGA § 10-7-20 are those who are "*joint* sureties . . . to the *same* obligation." (Emphasis supplied.) Black's Law Dictionary (4th ed. 1951). Accord *Daprano v. Sherwin-Williams Co.*, 166 Ga. App. 811, 812 (305 SE2d 655) (1983). Appellants here are concatenated limited sureties. The November 26 judgment established that the sum of their total *individual* liabilities equals the principal amounts of the notes, but no one surety is *jointly* liable with another for the *same portion* of the debt. As appellants are not jointly liable, they are not co-sureties within the meaning of OCGA § 10-7-20 and so were not discharged by the settlement agreement entered into by appellees with fewer than all of the limited guarantors.

(b) Appellants urge that the settlement agreement, entered into without their knowledge and consent, amounted to a novation which released them as sureties. "Any change in the nature or terms of a contract is called a 'novation'; such novation, without the consent of the surety, discharges him." OCGA § 10-7-21. However, because appellants are not jointly liable for the same portions of the total debt to appellees, any novation by virtue of the settlement agreement would not operate to release them from their own individual limited liabilities. "We are well aware of the long standing rule urged by [appellants]. . . . This rule is based on the rationale that such a release causes injury or impairment to the obligation of the co-maker or co-guarantor. The injury generally arises because the co-guarantor is both *jointly and severally liable on the entire note*. In the instant case we have a different situation. Although the note in question is jointly guaranteed, each guarantor has specifically *limited* his liability thereon to *his own interest*. Under these circumstances, there can be no injury to [appellants] by the [settlement with the covenantees as to their own individual proportionate liability]." (Indention omitted; emphasis supplied in part.) *Holcombe v. Eng*, 163 Ga. App. 343, 344 (294 SE2d 568) (1982). The trial court did not err in denying appellants' motion for directed verdict on the grounds of composition or novation.

(c) Appellants contend that the agreement is a promise not to enforce a judgment rather than a covenant not to sue. " 'A covenant not to sue is not a release, but it is to be distinguished from a release, and the distinction, although technical or artificial, is clear. The difference is one of intent and grows out of the construction placed on the terms of the instrument, since a covenant not to sue is not a present abandonment or relinquishment of a right or claim but merely an agreement not to enforce an existing cause of action, and, although it may operate as a release *between the parties to the agreements*, it

will not release a claim against joint obligors. . . .' [Cit.]" (Emphasis supplied.) *Mercantile Nat. Bank v. Founders Life Assur. Co. of Fla.*, 236 Ga. 71, 73 (1) (222 SE2d 368) (1976). See also *Crim v. Jones*, 204 Ga. App. 289, 291 (419 SE2d 130) (1992). On the other hand, OCGA § 9-13-74 provides: "An agreement for a valuable consideration *never* to enforce a judgment or execution *shall release* the judgment or execution." (Emphasis supplied.) Appellants rely on *Weems v. Freeman*, 234 Ga. 575 (216 SE2d 774) (1975) for the proposition that the agreement must be construed as an agreement never to enforce a judgment.

In *Weems*, during the pendency of an action for nuisance and trespass, two of three alleged joint tortfeasors agreed to settle with the plaintiff upon payment of specified sums. They were not dismissed from the pending litigation; rather judgment against all tortfeasors would be pursued, but it was agreed that only the non-settling defendant would be obligated thereunder and only for a one-third share of the judgment. Although the agreement was captioned as a covenant not to sue, the Georgia Supreme Court concluded that in substance the agreement was a promise never to enforce the judgment against the settling joint tortfeasors, which released that non-settling joint tortfeasor. Recognizing that a valid covenant not to sue may be entered into during the pendency of litigation, the *Weems* court went on to hold: "it is a non sequitur to claim that there is a covenant not to sue and yet at the same time continue the action [to judgment] against those who are parties to the agreement. This type settlement is in reality an agreement not to enforce the judgment against any defendant who is a party to the agreement." Id. at 576-577. Although the uncodified common law rule of releases as applied in *Weems* has been overruled in Georgia in the context of a tort action (see *Posey v. Med. Center-West*, 257 Ga. 55 (354 SE2d 417) (1987); *Lackey v. McDowell*, 262 Ga. 185 (415 SE2d 902) (1992)), the analysis remains viable in the context of a contract action against joint obligors or joint guarantors. See *J & S Properties v. Sterling*, 192 Ga. App. 181, 183 (384 SE2d 194) (1989) (Deen, P. J., and Benham, J., concurring specially). Nevertheless, we find *Weems* to be distinguishable in material respects.

" '*Weems v. Freeman* does not stand for the proposition that an otherwise valid covenant not to sue *automatically* becomes a general release in the mere event that a suit is subsequently instituted jointly against the covenantees and others.' " (Emphasis in original.) *Revis v. Forsyth County Hosp. Auth.*, 170 Ga. App. 366, 370 (317 SE2d 237) (1984). "It is obvious that the ultimate holding of *Weems v. Freeman* is premised upon: (1) The *continuation* of litigation against *all* defendants after a purported covenant not to sue has been executed in favor of *some* defendants; and (2) the eventual rendering of an osten-

sibly valid *judgment* against *all* defendants, which judgment would in fact be unenforceable as against those who are covenantees. It is *only* in those circumstances that a purported original covenant not to sue becomes, in effect, an agreement not to enforce a judgment pursuant to OCGA § 9-13-74." (Emphasis supplied in part.) *Bevill v. North Bros. Co.*, 168 Ga. App. 97, 100 (2) (308 SE2d 215) (1983). Here, unlike in *Weems*, the settling guarantors were dismissed from the action before retrial, and the final judgment was not entered against them. Accordingly, no existing judgment, pursuant to which both appellants and the settling guarantors were joint debtors, has been extinguished by the settlement agreement, regardless of its ultimate characterization as a mere covenant not to sue or as a promise never to enforce a judgment. See *Moore v. Smith*, 78 Ga. App. 49, 53 (1) (50 SE2d 219) (1948). Although the body of the agreement recites that appellee-covenantors "will not enforce any judgment" against the covenantees, it also expressly states that the covenantors have not accepted payment in complete satisfaction and that it is not intended as a release, and further expressly retains the right to pursue the remaining non-settling guarantors, identifying them by name. These circumstances are evidence of an intent to enter into a covenant not to sue. *Weems*, supra at 576.

"'The primary consideration in the construction of such instruments is whether they show an intention on the part of the [creditor] to acknowledge a full satisfaction of his damage and injury, and so to relinquish the cause of action and extinguish the liability of all persons involved . . . , or whether they show an intention only to accept a satisfaction of a part of the claim. And the intention of the parties, as shown by the instrument, will be given effect regardless of what the parties may call the instrument.' [Cit.]" *Bevill*, supra at 98. See also OCGA § 13-2-3. As the language employed in the agreement is contradictory, in some respect, even after application of the rules of contract construction, the trial court correctly denied appellants' motion for directed verdict and submitted to the jury the question of the true intent of the contracting parties to this settlement agreement. See generally *Robert Half of Atlanta v. Diversitech Corp.*, 208 Ga. App. 427, 428 (430 SE2d 800) (1993).

2. Appellants further contend that they are entitled to a pro tanto reduction in the $250,000 judgment against them for the amounts received in settlement. This argument is rendered moot by the entry of the November 26 judgment, which superseded the court's previous joint and several judgment, so as to establish a limited proportional liability for each guarantor. See *Moore*, supra at 53 (1).

*Judgment affirmed. Beasley, P. J., and Smith, J., concur.*

DECIDED MARCH 14, 1994.

*Dupree, Johnson & Poole, Hylton B. Dupree, Jr., Mark A. Johnson,* for appellants.
*Stevens & Associates, Ronald S. Stevens,* for appellees.