**SECOND DIVISION**
**DOYLE, P. J.,**
**DAVIS, J., and SENIOR JUDGE FULLER**

**NOTICE: Motions for reconsideration must be** *physically received* **in our clerk's office within ten days of the date of decision to be deemed timely filed.**
**https://www.gaappeals.gov/rules**

**June 17, 2026**

# In the Court of Appeals of Georgia

A26A0205. RESCIGNO v. REALMARK SCB, LLC.

DOYLE, Presiding Judge.

Tracy Rescigno and Realmark SCB, LLC, ("Realmark") arbitrated a dispute over a residential construction contract. After a hearing, the arbitrator awarded Realmark $79,597.04 in damages. Realmark filed a petition to confirm the award, which the trial court granted and entered a judgment thereon. Rescigno appeals, arguing that the trial court erred by confirming the arbitration award because the arbitrator manifestly disregarded the law. For the reasons that follow, we affirm.

"In reviewing a trial court's order confirming ... an arbitration award, the appellate court reviews de novo the trial court's resolution of questions of law." *Cerium Urgent Care, LLC v. GASM, LLC*, 375 Ga. App. 148, 148 (914 SE2d 656)

(2025) (quotation marks omitted).

So viewed, the record reflects that on July 12, 2021, Rescigno and Realmark executed a contract whereby Realmark would construct a home for Rescigno on property she owns in Fulton County, Georgia (the "Contract"). The Contract included a binding arbitration provision applicable to disputes arising out of the Contract. On June 28, 2022, Douglas Davis cosigned the Contract as a second property owner.

Davis passed away on February 1, 2023. At this time, Rescigno and Davis were current on all invoices due to Realmark for work performed under the Contract. On February 14, 2023, Davis's estate rescinded Rescigno's authorization to make decisions on Davis's behalf under the Contract. Thereafter, Rescigno continued incurring costs for work performed by Realmark under the Contract, and disputes began to arise regarding Rescigno's alleged delays in making selections and payments, as well as Realmark's alleged construction defects.

On October 5, 2023, Rescigno sued Davis's estate, seeking, among other things, payment for costs incurred under the Contract after Davis's death. At this time, there was a $279,564.25 balance due to Realmark under the Contract. On December 8, 2023, Davis's estate filed an answer in which it denied liability for the outstanding

balance, raised a counterclaim against Rescigno for fraud and conversion, and brought a third-party claim against Realmark, seeking a declaratory judgment that Davis's estate was not liable to Realmark for the outstanding balance.

On January 31, 2024, Davis's estate executed a settlement agreement with Realmark in which Davis's estate agreed to pay Realmark $10,000 in exchange for a release of all of Realmark's claims against Davis's estate relating to the Contract. Rescigno was not a party to this agreement, and the terms of the release expressly excluded any claims that Realmark or Davis's estate had against her under the Contract.

On October 16, 2024, Realmark filed a demand for arbitration and complaint for damages against Rescigno, seeking recovery of the outstanding balance under the Contract. Rescigno filed an answer in which she raised counterclaims for breach of contract, breach of warranty, negligent construction, and conversion. The parties thereafter agreed to arbitration and selected an arbitrator to conduct an evidentiary hearing. Prior to the hearing, Rescigno moved to dismiss Realmark's claims against her. In support of the motion, Rescigno cited *Dobbs v. Nat'l Bank of Ga.*, 163 Ga. App. 413 (294 SE2d 632) (1982), for the proposition that "the release of one joint obligor releases all[,]" arguing that because Realmark had released all its claims against the

3

estate of Davis, who had cosigned the Contract, Realmark had also extinguished its claims under the Contract against Rescigno. See id. See also OCGA § 13-4-80.

At the arbitration hearing, Rescigno reiterated her position that Realmark's claims against her under the Contract should be dismissed in light of the settlement agreement with Davis's estate. In opposition, Realmark provided the arbitrator with a copy of the agreement and argued that the release of one joint obligor does not necessarily operate as a release of all if the language of the release indicates otherwise. In support of this argument, Realmark cited *Crim v. Jones*, 204 Ga. App. 289 (419 SE2d 130) (1992), for the proposition that

> [w]hether the plaintiff has received full satisfaction and whether the parties intended the result of their negotiations to be a complete freedom from further liability for all the defendants, should be paramount in determining the effect of any agreement purported to operate as a release and should be inquired into whenever the problem arises in a case.

Id. at 291 (punctuation and quotation marks omitted). Pursuant to this authority, Realmark argued that because it had not received full satisfaction of its claims under the Contract by virtue of its $10,000 settlement with Davis's estate, and because the language of the settlement agreement indicated that Realmark did not intend the agreement to release its claims against Rescigno, Rescigno's motion to dismiss should

4

be denied.

On January 24, 2025, the arbitrator awarded Realmark $79,597.04 in damages against Rescigno under the Contract and denied Rescigno's motion to dismiss. Realmark filed a petition to confirm the arbitration award. Rescigno filed a response in opposition to the petition, in which she requested, among other things, that the award be vacated pursuant to OCGA § 9-9-13(b)(5) because the arbitrator manifestly disregarded the law by failing to dismiss Realmark's claims against her on the basis of its settlement agreement with Davis's estate. Realmark filed a reply to Rescigno's response in opposition, in which it contended that the arbitrator did not manifestly disregard the law and had appropriately denied Rescigno's motion to dismiss.

On March 17, 2025, the trial court granted Realmark's petition to confirm the arbitration award. In the order, the trial court found that Rescigno had not established that the arbitrator had manifestly disregarded the law by denying her motion to dismiss because, despite her citation to *Dobbs*, 163 Ga. App. at 413, more recent case law considered by the arbitrator established that "the release of one joint and several obligor does not automatically release the other joint and several obligors" depending on the intentions of the parties to such release, and Realmark's settlement agreement with Davis's estate clearly excluded Rescigno as a releasee.

On March 26, 2025, Rescigno filed a motion for reconsideration, in which she argued that the arbitrator (and now the trial court) had manifestly disregarded the law on the grounds previously asserted. Realmark responded in opposition, and the trial court denied the motion. Rescigno filed a notice of appeal from the trial court's order confirming the arbitration award. This Court dismissed the appeal because the trial court had not yet entered judgment on the order. On June 25, 2025, the trial court entered judgment on the order confirming the award. Rescigno now appeals.

In her sole enumeration of error, Rescigno contends that the trial court erred by confirming the arbitration award, rather than vacating it pursuant to OCGA § 9-9-13(b)(5), because the arbitrator manifestly disregarded the law in entering the award. We disagree.

"The power of a court to vacate an arbitration award has been severely restricted so as not to frustrate the legislative purpose of avoiding litigation and encouraging arbitration." *Faiyaz v. Dicus*, 245 Ga. App. 55, 57(1) (537 SE2d 203) (2000). "The Arbitration Code demands that courts give extraordinary deference to the arbitration process and awards." *Brookfield Country Club, Inc. v. St. James-Brookfield, LLC*, 287 Ga. 408, 411(1) (696 SE2d 663) (2010) (quotation marks omitted).

OCGA § 9-9-13(b)(5) provides that an arbitration award "shall be vacated on the application of a party who either participated in the arbitration or was served with a demand for arbitration if the court finds that the rights of that party were prejudiced by … [t]he arbitrator's manifest disregard of the law." "[A]n arbitrator's award may be vacated if it can be shown that the arbitrator manifestly disregarded the proper law applicable to the case before him. This disregard must be both evident and intentional." *ABCO Builders, Inc. v. Progressive Plumbing, Inc.*, 282 Ga. 308, 309 (647 SE2d 574) (2007).

> [T]he concept of manifest disregard has never been the equivalent of insufficiency of the evidence or a misapplication of the law to the facts. It is a much narrower standard, requiring a showing in the record, other than the result obtained, that the arbitrators knew the law and expressly disregarded it. Arbitrators must deliberately ignore applicable law to fall within the manifest disregard prohibition in OCGA § 9-9-13(b)(5).

*Brookfield Country Club, Inc. v. St. James-Brookfield, LLC*, 299 Ga. App. 614, 620-21(3) (683 SE2d 40) (2009) (punctuation and emphasis omitted). "[T]his showing is an extremely difficult one to make[.]" *ABCO Builders, Inc.*, 282 Ga. at 309.

In this case, Rescigno points to no evidence of the arbitrator's intent to purposefully disregard the law. See id. ("[C]lear evidence of the arbitrator's intent to purposefully disregard the law is required.") Rescigno argues that this intent is

7

apparent on the face of the arbitration award, in the language of the arbitrator's ruling on her motion to dismiss: "[Rescigno]'s Motion to Dismiss the claims of [Realmark] as a matter of law is DENIED." This argument lacks merit.

The record reflects that the arbitrator considered and rejected Rescigno's argument for dismissal based on language in *Dobbs*, 163 Ga. App. at 413, indicating that Realmark's settlement agreement with Davis's estate should have operated as a release of Rescigno. In response to this argument, the arbitrator was presented with more current decisional authority indicating that this general proposition should not necessarily hold in light of the facts of this case:

> The fundamental rule, the rule which swallows up almost all others in construing a paper, is to give it that meaning which will best carry into effect the intent of the parties. This is the object of rules of interpretation, to discover the true intent of the parties, and in doing this we are to take the whole of the instrument together, and to consider this with the surrounding circumstances. Whether the plaintiff has received full satisfaction and whether the parties intended the result of their negotiations to be a complete freedom from further liability for all the defendants, should be paramount in determining the effect of any agreement purported to operate as a release and should be inquired into whenever the problem arises in a case. A covenant not to sue is not a release, but it is to be distinguished from a release, and the distinction, although technical or artificial, is clear. The difference is one of intent and grows out of the construction placed on the terms of the instrument,

8

> since a covenant not to sue is not a present abandonment or relinquishment of a right or claim but merely an agreement not to enforce an existing cause of action, and, although it may operate as a release between the parties to the agreements, it will not release a claim agains[t] joint obligors[.]

*Crim*, 204 Ga. App. at 290-91 (citations and punctuation omitted).

The explicit terms of Realmark's settlement agreement with Davis's estate indicate that it was not intended as a release of Realmark's claims against Rescigno, who was not a party to the agreement. See id. Moreover, Realmark did not obtain full satisfaction of the $279,564.25 balance claimed under the Contract by virtue of the $10,000 settlement with Davis's estate. Thus, we cannot say that the arbitrator's denial of Rescigno's motion to dismiss was based on an incorrect application of controlling law, much less that it was based on an intentional disregard of such law. See *ABCO Builders, Inc.*, 282 Ga. at 309.

Morever, even assuming arguendo that the arbitrator's interpretation of the applicable law was incorrect, this would be insufficient to show that the arbitrator had manifestly disregarded it.

> [A]n arbitrator who incorrectly interprets the law has not manifestly disregarded it. The arbitrator has simply made a legal mistake. Mere error in law or failure on the part of the arbitrator to understand or apply the law does not amount to deliberately disregarding the law in order to

9

reach the result the arbitrator reached. ... Even if the reviewing court were convinced that it would have decided a contractual dispute differently, that would not be nearly enough to set aside the arbitrator's award.

*Adventure Motorsports Reinsurance, Ltd. v. Interstate Nat'l Dealer Servs., Inc.*, 313 Ga. 19, 27(1) (867 SE2d 115) (2021) (citations and punctuation omitted). Accordingly, the trial court did not err by confirming the arbitration award.

*Judgment affirmed. Davis, J., and Senior Judge C. Andrew Fuller concur.*