## A03A0038, A03A0039. SCANA ENERGY MARKETING, INC. v. COBB ENERGY MANAGEMENT CORPORATION et al.; and vice versa.
### (576 SE2d 548)

ELDRIDGE, Judge.

This case is an appeal, Case No. A03A0038, and a cross-appeal, Case No. A03A0039, from an arbitration award. The facts are: SCANA Energy Marketing, Inc. ("SCANA") entered into a Natural Gas Retail Service Alliance Agreement ("Agreement") with Cobb Energy Management Corporation, Upson Electric Membership Corporation, Lamar Electric Membership Corporation, Central Georgia Electric Membership Corporation, Greystone Power Corporation, and Snapping Shoals Energy Management Corporation ("Allies"), all EMCs, to help SCANA penetrate the deregulated retail natural gas market in Georgia and to keep them from possibly qualifying to become competitors. The Allies had the obligation of assisting SCANA in locating and acquiring residential and commercial customers in the areas where the Allies each provided electric services from among its customers or those familiar with the Allies within the EMCs' territories. Upon obtaining a 30 percent market share, SCANA sought to terminate the obligation, avoiding the payment of fees and compensation to the Allies under the Agreement. The Allies invoked the mandatory binding arbitration provision under the Agreement to resolve disputes and under the CPR Institute for Dispute Resolution ("CPR") rules. The Agreement's arbitration clause provided for "baseball arbitration" where the arbitrators had to choose between one of the parties' proposed remedies in its entirety and without alteration. Agreement, § 9.3; see for explanation of "baseball arbitration" *Pennsylvania Environmental Defense Foundation v. Canon-McMillan School Dist.*, 152 F3d 228, 239 (3rd Cir. 1998) (Garth, C. J., dissenting) (in baseball arbitration, the Panel is limited to selecting one alternative in order to reinforce the incentives of moving the parties toward their best judgment of a realistic outcome). In turn, SCANA sought to avoid arbitration, arguing that either the Agreement was void or that SCANA had terminated the Agreement. On December 11, 2000, the superior court ordered the parties to commence arbitration of the disputes under the Agreement. SCANA sought to have the award vacated, alleging that the arbitrators overstepped their authority under the Agreement and the law, but the superior court confirmed the award. SCANA appeals. Finding no error, we affirm in Case No. A03A0038.

### Case No. A03A0038

1. SCANA contends that the superior court erred in denying its motion to vacate the arbitrators' award, because the arbitrators over-

stepped their authority without any legal or contractual authority in making the award. We do not agree.

Of the parties' proposed remedies, the arbitrators, under the Agreement's arbitration provisions, selected the Allies' Remedy No. 5, which was stated as a remedy to the defaults or in the alternative as an offer of amendment to the Agreement:

> from and after the Panel's Order, SCANA shall pay the Petitioners the fees and reimbursements as set forth in the Alliance Agreement, and SCANA shall remove the one dollar additional charge and not impose any additional charge on gas customers located within the Petitioners' territories, where such charges are not also imposed on all SCANA gas customers in the State of Georgia; *provided however*, that SCANA shall have the option to be exercised not later than 90 days from the date of the Panel Final Order to elect, by written notice to the Petitioners, that the Petitioners shall provide all Call Center Services and Billing Services for a flat fee of $3.95 per customer per month, each such amount escalated annually at the rate of the Consumer Price Index, and in that instance SCANA shall remove the $1.00 additional charge imposed on gas customers within the Petitioners' territories and not thereafter impose any additional charge on gas customers located within the Petitioners' territories where such charges are not also imposed on all SCANA gas customers in the State of Georgia.

SCANA asserts that in selecting this remedy the arbitrators, by a vote of two to one, overstepped their authority as arbitrators. OCGA § 9-9-13 (b) (3). SCANA opposes the award and has rejected the alternative offer of amendment to the Agreement contained in the award.

(a) To the contrary, there has been no overstepping of authority by the arbitrators, because in the Agreement, SCANA granted such power and authority to prohibit discriminatory treatment against gas customers in the Allies' territories by agreeing to bind itself in its fees and rates applicable to gas customers in the Allies' territories and set forth that discriminatory rates applicable to such gas customers within the Allies' territories would constitute a default of the Agreement. The Agreement provides: "[if] SCANA fails materially to provide gas and related customer service at market rates or better, in accordance with Prudent Utility Practice[, then such discriminatory rate constitutes a default of the Agreement]." See Agreement, Article XI — Default, 11.2 Performance Default, (a) (iii). Thus, the dollar per customer fee charged to all gas customers within the Allies' territo-

ries and not charged to all other SCANA gas customers statewide constituted a clear act of default by such discriminatory conduct under the clear, plain, and unambiguous terms of the Agreement. Further, SCANA failed to establish that such discriminatory fee was in any way justified under any "Prudent Utility Practice."

Since the Agreement prohibited SCANA from imposing discriminatory fees and rates on gas customers within the Allies' territories, then such remedy was clearly within the scope of the arbitrators' authority and was properly before the arbitrators as one of the defaults under the Agreement, along with the failure to pay or to reimburse the Allies. *Ralston v. City of Dahlonega*, 236 Ga. App. 386, 388 (3) (512 SE2d 300) (1999). Since SCANA, by agreement, had contractually limited its ability to set fees or rates that discriminated against the gas customers in the Allies' territories, such remedy was not prejudicial nor the product of overstepping of the arbitrators' authority. See OCGA § 9-9-13 (b) (3); *Bennett v. Builders II, Inc.*, 237 Ga. App. 756, 757 (3) (516 SE2d 808) (1999).

(b) By statute and regulations, SCANA, as a certified gas marketer, has the right to set retail natural gas prices in Georgia; however, SCANA, by its contracts, may voluntarily limit or surrender such rights to set rates, even if the Georgia Public Service Commission lacks such power. OCGA § 46-4-160.

(c) Here the arbitrators' award compelled SCANA to remove the discriminatory fee of $1 from the monthly billing to each gas customer in the Allies' territories to avoid defaulting on the Agreement.

> An arbitration award should be consistent with terms of the underlying agreement and reflect the "essence" of that contract; it must not demonstrate an "imperfect execution" of the arbitrator's authority. Although an arbitrator has some latitude in fashioning remedies, he is not free to ignore the express terms of a valid and enforceable contract.

(Citations omitted.) *Sweatt v. Intl. Dev. Corp.*, 242 Ga. App. 753, 755 (1) (531 SE2d 192) (2000). Here, the arbitrators found the scope of their authority within the four corners of the contract and were resolving one of several acts of default under the Agreement by SCANA.

(d) SCANA contends that the arbitrators made a factually incorrect determination that all retail gas customers in the Allies' territories were electric customers of the Allies, because some of the gas customers were not the Allies' electric customers. Article XI, Sec. 11.2, (a) (iii) makes no distinction between customers of the Allies and all retail gas customers within the Allies' territories, so that such

provision applies to all retail gas customers within the Allies' territories.

Further, an arbitration award cannot be set aside for mistakes of fact made by the arbitrators, but an award may only be set aside for violation of one or more of the statutory grounds, because these are the exclusive grounds to vacate all or part of an arbitration award:

> (1) Corruption, fraud, or misconduct in procuring the award; (2) Partiality of an arbitrator appointed as a neutral; (3) An overstepping by the arbitrators of their authority or such imperfect execution of it that a final and definite award upon the subject matter submitted was not made; or (4) A failure to follow the procedure of this part, unless the party applying to vacate the award continued with the arbitration with notice of this failure and without objection.

OCGA § 9-9-13 (b); *Progressive Data Systems v. Jefferson Randolph Corp.*, 275 Ga. 420 (568 SE2d 474) (2002); *Greene v. Hundley*, 266 Ga. 592, 596-597 (3) (468 SE2d 350) (1996) (reviewing court prohibited from weighing the evidence or determining sufficiency of the evidence); *Ralston v. City of Dahlonega*, supra at 386. "[R]eview must be confined to the four statutory grounds. [This] is because the Georgia Arbitration Code is in derogation of the common law and must be strictly construed." (Citations and punctuation omitted.) *Progressive Data Systems v. Jefferson Randolph Corp.*, supra at 420.

(e) To the extent that the arbitrators disregarded Georgia contract law in construing the Agreement or in fashioning a remedy from the remedies available to them under baseball arbitration provided by the Agreement,

> [i]nasmuch as the Code does not list "manifest disregard of the law" as a ground for vacating an *arbitration award*, it cannot be used as an additional ground for vacatur. Nor can it be said that a "manifest disregard of the law" fits within the framework of the third statutory ground listed . . . — overstepping of the arbitrator's authority. That ground only comes into play when an arbitrator determines matters beyond the scope of the case. It is not applicable where, as here, the issue to be decided, i.e., [defaults under the Agreement, are] properly before the arbitrator[s].

(Citations omitted; emphasis supplied.) *Progressive Data Systems v. Jefferson Randolph Corp.*, supra at 421.

(f) Remedy No. 5 does not regulate SCANA's rates beyond the terms of the Agreement in regard to retail natural gas sales throughout the State of Georgia, because in the Agreement, SCANA agreed

to treat gas customers within the Allies' territories in the same fashion as natural gas customers throughout the rest of Georgia.

However, in the alternative to the remedy, Remedy No. 5 offers, but does not order, an alternative remedy that SCANA could choose to apply to all natural gas customers in the Allies' territories, and which SCANA could of its own volition choose to implement and set as a fee as part of its rates. Such offer was to amend the Agreement between SCANA and the Allies, setting a flat fee for services. Only SCANA has the power and authority to impose such fee as part of its rate-making power. If SCANA chose to impose such fee uniformly, then the Agreement would prohibit the $1 fee on gas customers within the Allies' territories, which is within the Agreement terms to prohibit. Such alternative remedy, which the arbitrators could not order into effect, does not void the remedy of the prohibition of the $1 fee within the Allies' territories, which is within the terms of the Agreement's remedies. Had the arbitrators ordered such alternative remedy to be implemented, instead of stating it as an alternative offer of contract amendment to be implemented in the discretion of SCANA, this would be "overstepping by the arbitrators," because the Agreement did not contemplate any effect on rates and fees throughout the rest of the State or even within the Allies' territories. The plain and unambiguous reading of Remedy No. 5, itself, excluding the offer of contract amendment, does not order SCANA to do anything except to cease the imposition of the $1 fee within the Allies' territories in a discriminatory fashion and to pay the Allies what it owes to them, which provisions are within the terms of the Agreement.

(g) SCANA contends that the arbitrators should not have dealt with the discriminatory rate paid by gas customers in the Allies' territories, because the arbitrators used equity in reaching an equitable remedy. OCGA § 9-9-13 (d) states: "[t]he fact that the relief was such that it could not or would not be granted by a court of law or equity is not [a] ground for vacating or refusing to confirm the award." See *Greene v. Hundley*, supra at 595. To obtain a resolution, arbitrators " 'are free to apply broad principles of justice and good conscience, and decide according to their concept or notion of justice.' " (Citation omitted.) *Bartlett v. Dimension Designs*, 195 Ga. App. 845, 848 (3) (395 SE2d 64) (1990), overruled on other grounds, *Pace Constr. Corp. v. Northpark Assn.*, 215 Ga. App. 438, 439 (450 SE2d 828) (1994). This is particularly true where the parties, by contractual agreement, have entered into "baseball arbitration," because the parties have tied the hands of the arbitrators, requiring them to select without changing among remedies presented, i.e., the best of a bad lot.

(h) To the extent that either the Agreement or Remedy No. 5 constitutes a violation of Federal Antitrust Laws, exclusive jurisdiction of such issues lies within the federal courts.

## Case No. A03A0039

2. The arbitrators' Remedy No. 5 provided for SCANA to accept or to reject the alternative remedy, the offer of contract amendment, and of setting a $3.95 flat rate for Call Center and Billing Services by the Allies within 90 days from the award by November 2, 2001; the superior court changed such date to the date of the trial court's order of May 7, 2002, which had the effect of extending the time within which SCANA could accept the offer that the Allies intended to be on the table for a finite time. In their cross-appeal, the Allies contend that such change by the trial court was error. We agree.

The superior court erred in altering the date in the arbitrators' award. Since the Georgia Arbitration Code is in derogation of common law, requiring strict construction, the trial court could only enter judgment on the award or vacate it under one or more of the statutory grounds. The trial court lacked statutory authority to alter the arbitrators' award in this fashion. See OCGA § 9-9-13 (b); *Progressive Data Systems v. Jefferson Randolph Corp.*, supra; *Greene .v. Hundley*, supra at 597; *Ralston v. City of Dahlonega*, supra at 387. The Arbitration Code demands that courts give extraordinary deference to the arbitration process and awards so that the trial court cannot alter the award. See generally *Bartlett v. Dimension Designs*, supra at 848 (3). "[T]he power of a court to vacate an arbitration award has been *severely limited* in order not to frustrate the legislative purpose of avoiding litigation by resort to arbitration." (Citation omitted; emphasis in original.) *Haddon v. Shaheen & Co.*, 231 Ga. App. 596, 597 (1) (499 SE2d 693) (1998).

Since the making or setting of rates, except where limited by the Agreement as determined in Division 1, is a discretionary right of SCANA, then neither the arbitrators nor the trial court could mandate SCANA to exercise such discretion by any date certain. SCANA could exercise the discretion to impose a $3.95 rate upon all natural gas users in the Allies' territories to be paid to the Allies for its services at any time, except as otherwise limited by the Agreement.

First, Remedy No. 5 of the Allies constituted a remedy in which the Allies, under the express terms of the Agreement, would be paid the fees owed and gas customers within the Allies' territories would be relieved of the $1 discriminatory fees; second, in the alternative, the Allies made a time-limited offer to SCANA that the Agreement be amended, requiring the Allies to receive $3.95 per customer within the Allies' territories, and the $1 fee per customer would be

dropped. Such offer to modify the Agreement in no way constituted rate making, because for such fee to become effective, SCANA had to agree to it within 90 days of the final award of the arbitrators. SCANA, by its affirmative action in accepting the offer of amendment as an alternative to the remedy, would itself exercise discretion to change the natural gas rates within the Allies' territories. The arbitrators accepted the Allies' Remedy No. 5 with the alternative offer of a remedy, which constituted an offer of contract modification made by the Allies to be accepted or rejected within 90 days of the arbitrators' award. The failure of SCANA to accept such offer of modification to the Agreement within 90 days of the arbitrators' award and its action to vacate the award caused such offer to lapse by its express terms, leaving the first part of Remedy No. 5 under the Agreement still in effect. Since SCANA has not chosen to accept such Agreement amendment and impose such rate, then SCANA is bound under the arbitrators' award to pay all fees and reimbursements to the Allies and to remove the $1 discriminatory charge on all gas customers within the Allies' territories.

*Judgment affirmed in Case No. A03A0038. Judgment reversed in Case No. A03A0039. Johnson, P. J., and Mikell, J., concur.*

DECIDED NOVEMBER 14, 2002 —
RECONSIDERATION DENIED JANUARY 15, 2003 —

*Crim & Bassler, Harry W. Bassler, Joseph M. Murphey,* for appellant.

*Brock, Clay, Calhoun, Wilson & Rogers, Charles C. Clay, Nicholas P. Panayotopoulos, Paul, Hastings, Janofsky & Walker, William B. Hill, Jr.,* for appellees.