## A09A1408. BROOKFIELD COUNTRY CLUB, INC.
## v. ST. JAMES-BROOKFIELD, LLC.
### (683 SE2d 40)

ELLINGTON, Judge.

Brookfield Country Club, Inc. ("Brookfield") filed this appeal from the order of the Superior Court of Fulton County that granted the motion of St. James-Brookfield, LLC ("St. James"), to confirm an arbitrator's award in which the arbitrator determined that Brookfield had breached a lease agreement between the parties. The same order also denied Brookfield's application to partially vacate the arbitrator's award. On appeal, Brookfield contends that the trial court erred in confirming the award over its objections, arguing that the arbitrator issued an award that was inconsistent with the applicable law, overstepped her authority, and manifestly disregarded the law. Because Brookfield failed to carry its burden on appeal of demonstrating error in the confirmation proceeding, as we have explained below, we affirm the trial court's order confirming the arbitrator's award.

The record shows the following undisputed facts. Brookfield is a non-profit corporation established in 1991 to own and operate a country club in Roswell. During its first nine years, Brookfield operated the club's golf course, drawing water to irrigate the golf course from a man-made lake on the property. The Georgia Water Quality Control Act, OCGA § 12-5-20 et seq., which governs the use of Georgia's surface waters, requires a permit from the Environmental Protection Division of the Department of Natural Resources before any withdrawal or diversion of surface waters, including the lake on Brookfield's property. OCGA § 12-5-31 (a). Although OCGA § 12-5-31 (a) (1) (A) provides an exception to the permit requirement for withdrawals that do not involve more than 100,000 gallons per day on a monthly average, the amount of water required to maintain Brookfield's golf course far exceeds that limit. Brookfield never obtained the required permit.

In 2000, Brookfield leased the property to St. James; pursuant to the long-term lease and an associated management agreement, St. James agreed to renovate the facilities and to operate the country club, including the golf course. Specifically, St. James agreed to "operate the premises as a first-class private country club and golf facility in accordance with . . . the required standards," which were defined as

> the average of the standards for maintenance and operation established by other upscale first class private country club facilities in the greater north Atlanta metropolitan area (including the counties of Fulton, Cobb and Gwinnett), or other private country and golf clubs owned or operated by [St. James], that charge similar dues and fees and have comparable facilities.

In the lease, Brookfield warranted that it owned the premises, including the "water, water courses, water rights and powers . . . [then] located on, under or above all or any portion of the land or appurtenant thereto." In addition, Brookfield warranted that it owned the premises in fee simple and had not conveyed an interest in the premises except for specified "permitted exceptions." In a covenant for quiet enjoyment, Brookfield promised to defend St. James's possession of the premises against all parties claiming by, through, or under Brookfield. In a suitability of premises provision, St. James accepted the premises in their present condition as being suitable to its needs.

In the lease, the parties agreed to submit all disputes "concerning . . . the terms of [the] lease or its construction, meaning or enforceability . . . to negotiation and, if necessary, mediation and arbitration" pursuant to the terms of the section of the lease pertaining to dispute resolution and the Arbitration Code, as applicable. The dispute resolution section provided, "[i]n making [an] award, the arbitrator shall be bound by the strict terms of the lease and management agreement, as applicable[.]" Further,

> [t]he arbitrator's award may be vacated by a court of competent jurisdiction if the court finds the arbitrator's award is not consistent with applicable law or not supported by a preponderance of the evidence and testimony adduced by the arbitrator[ ] at the arbitration hearing(s), or for a failure to follow the procedures set forth [in the lease] or in the AAA Commercial Arbitration Rules, all in addition to the grounds for vacation of an award as set forth in the Georgia Arbitration Code.

St. James initiated an arbitration proceeding in 2008, after learning about the permit that was required for it to withdraw water from the lake in quantities sufficient to irrigate the golf course. In its arbitration demand, St. James claimed that Brookfield is liable for all costs associated with obtaining the required permit and complying with the permit so as to supply the golf course with as much irrigation water as necessary to maintain the golf course. Brookfield is liable for these expenses, St. James argued, either because Brookfield promised to indemnify St. James from losses resulting from Brookfield's use of the property before the effective date of the lease or because Brookfield breached the lease, specifically the warranties of title and the covenant for quiet enjoyment, by failing to obtain the permit.

After a hearing, the arbitrator determined that the relevant contract terms were unambiguous. Applying the plain meaning of the contract terms, the arbitrator determined that Brookfield breached its warranty that it owned all "water rights and powers" appurtenant to the premises, except the listed permitted exceptions. The arbitrator based this conclusion, in part, on the undisputed facts that Brookfield did not have the surface-water-use permit required to adequately irrigate the golf course, that St. James could fulfill its obligations under the management agreement only if it could adequately irrigate the golf course, and that Brookfield failed to include among the permitted exceptions to its fee simple interest the regulatory limitations on water use. In terms of relief, the arbitrator ordered Brookfield to pay the costs attendant to the permit application process, including compiling an associated low-flow-protection plan.[1] The arbitrator ruled that St. James would have to bear all other expenses associated with fulfilling its obligations under the lease and management agreement.

St. James moved to confirm the arbitrator's decision, and, on the same bases it asserts in this appeal, Brookfield moved to partially vacate it. The trial court denied Brookfield's motion and confirmed the award.

1. Brookfield contends that, for various reasons, the arbitrator's award is not consistent with Georgia law. Brookfield concedes that this is not one of the statutory bases for vacatur[2] but contends that the trial was nonetheless authorized to vacate the award on this basis because the arbitration provision in the subject contract provides for vacatur if the reviewing court finds that the arbitrator's

---

[1] See Ga. Comp. R. & Regs. r. 391-3-6-.07 (procedures for granting permits for surface-water withdrawals).

[2] See OCGA § 9-9-13 (b), quoted in note 4 and discussed in Divisions 2 and 3, infra.

award is not consistent with applicable law. We conclude, however, that the Arbitration Code does not permit contracting parties who provide for arbitration of disputes to contractually expand the scope of judicial review that is authorized by statute.

"By its enactment, the Arbitration Code repealed common law arbitration in its entirety, and it must, therefore, be strictly construed." (Footnotes omitted.) *Greene v. Hundley*, 266 Ga. 592, 594 (1) (468 SE2d 350) (1996). In order to achieve the legislative purpose of allowing contracting parties to obtain an "expeditious and final resolution of disputes by means that circumvent the time and expense associated with civil litigation," the Arbitration Code places strict limits on the scope of a trial court's review of an arbitrator's award and on any subsequent review by an appellate court. Id. at 597 (3). Thus, the Arbitration Code requires courts to give extraordinary deference to arbitration awards[3] and commands that a trial court "shall confirm an award upon application of a party made within one year after its delivery to [the party], unless the award is vacated or modified by the court as provided in [the Arbitration Code]." OCGA § 9-9-12. The Arbitration Code lists five grounds for vacating arbitration awards,[4] and these statutory grounds provide the *exclusive* bases for vacatur. *Greene v. Hundley*, 266 Ga. at 594-595 (1); *Johnson Real Estate Investments v. Aqua Industrials*, 282 Ga. App. 638, 639-640 (1) (639 SE2d 589) (2006).

> In deciding whether to confirm or vacate an arbitration award, a trial court's role is severely curtailed so as not to frustrate the purpose of avoiding litigation. Unless one of the statutory grounds for vacating an award as set forth in OCGA § 9-9-13 (b) is found to exist, a trial court in reviewing an award is bound to confirm it.

---

[3] See *Scana Energy Marketing v. Cobb Energy Mgmt. Corp.*, 259 Ga. App. 216, 221 (2) (576 SE2d 548) (2002) ("The Arbitration Code demands that courts give extraordinary deference to the arbitration process and awards so that the trial court cannot alter the award.") (citation omitted).

[4] OCGA § 9-9-13 (b) provides:
> The award shall be vacated on the application of a party who . . . participated in the arbitration . . . if the [trial] court finds that the rights of that party were prejudiced by:
> (1) Corruption, fraud, or misconduct in procuring the award;
> (2) Partiality of an arbitrator appointed as a neutral;
> (3) An overstepping by the arbitrators of their authority or such imperfect execution of it that a final and definite award upon the subject matter submitted was not made;
> (4) A failure to follow the procedure of this part, unless the party applying to vacate the award continued with the arbitration with notice of this failure and without objection; or
> (5) The arbitrator's manifest disregard of the law.

(Citations omitted.) *Gilbert v. Montlick*, 232 Ga. App. 91, 93 (1) (499 SE2d 731) (1998). "In reviewing a trial court's order confirming an arbitration award, this Court will affirm unless the trial court's ruling was clearly erroneous." (Footnote omitted.) *Universal Mgmt. Concepts v. Noferi*, 270 Ga. App. 212, 214 (1) (605 SE2d 899) (2004).

Against the backdrop of these strict limits on the scope of judicial review of arbitrators' awards, these parties attempted to add to the grounds for vacatur provided in the Arbitration Code. By providing for vacatur where the reviewing court finds that the arbitrator's award "is not consistent with applicable law or not supported by a preponderance of the evidence," the lease purported to authorize a court to vacate an arbitrator's award for any legal error and to review the sufficiency of the evidence. Just as binding precedent prohibits a court from determining whether there is sufficient evidence to support an arbitration award,[5] we conclude that allowing a court to determine whether an award is consistent with applicable law would frustrate both the prompt resolution of arbitrated disputes and the finality of arbitration awards.

Although this appears to be a matter of first impression in Georgia, we are guided by a recent decision of the Supreme Court of the United States, *Hall Street Assocs. v. Mattel, Inc.*, 552 U. S. 576 (128 SC 1396, 170 LE2d 254) (2008). That case concerned an arbitration pursuant to the Federal Arbitration Act ("FAA"), upon which the Georgia Arbitration Code was largely modeled.[6] In the arbitration provision of the subject contract, the parties agreed that the court that reviewed and entered judgment on an arbitrator's award "shall vacate, modify or correct any award: (i) where the arbitrator's findings of facts are not supported by substantial evidence, or (ii) where the arbitrator's conclusions of law are erroneous." Id. at 1400-1401 (I). The High Court held that the FAA does not permit contracting parties to supplement by contract the statutory grounds for vacatur or modification of an arbitrator's award. Id. at 1403-1406 (III). The FAA mandates that a reviewing court "must grant" an application to confirm an arbitrator's award "unless the award is vacated, modified, or corrected as prescribed in [9 USC §§

---

[5] See *Greene v. Hundley*, 266 Ga. at 597 (3) ("Were we to allow an appellate court to determine whether there is sufficient evidence to support an arbitration award, we would make such awards entirely subject to independent determinations by courts of law, and thereby frustrate both the prompt resolution of arbitrated disputes and the finality of arbitration awards.").

[6] See Brent S. Gilfedder, " 'A Manifest Disregard of Arbitration?' An Analysis of Recent Georgia Legislation Adding 'Manifest Disregard of the Law' to the Georgia Arbitration Code as a Statutory Ground for Vacatur," 39 Ga. L. Rev. 259, 270-275 (Fall 2004); *Bryan County v. Yates Paving & Grading Co.*, 281 Ga. 361, 366 (638 SE2d 302) (2006), Hunstein, J., dissenting.

10 or 11]." 9 USC § 9.[7] The Court observed that this

> provision for judicial confirmation carries no hint of flexibility. . . . There is nothing malleable about "must grant," which unequivocally tells courts to grant confirmation in all cases, except when one of the "prescribed" exceptions applies. This does not sound remotely like a provision meant to tell a court what to do just in case the parties say nothing else.

(Footnote omitted.) *Hall Street Assocs. v. Mattel, Inc.*, 128 SC at 1405 (III). Allowing contracting parties to add to the statutory grounds for vacatur would "open[ ] the door to the full-bore legal and evidentiary appeals that can render informal arbitration merely a prelude to a more cumbersome and time-consuming judicial review process and bring arbitration theory to grief in post-arbitration process." (Citations and punctuation omitted.) Id. Because the Georgia Arbitration Code similarly carries no hint of flexibility with regard to judicial review of arbitration awards, we conclude that a trial court is, and we are, limited to considering the statutory grounds for vacatur, despite any additional grounds included in a contract that provides for arbitration of disputes. Accordingly, Brookfield's argument that the

---

[7] 9 USC § 10 (a) provides:

In any of the following cases the United States court in and for the district wherein the award was made may make an order vacating the award upon the application of any party to the arbitration –

(1) where the award was procured by corruption, fraud, or undue means;

(2) where there was evident partiality or corruption in the arbitrators, or either of them;

(3) where the arbitrators were guilty of misconduct in refusing to postpone the hearing, upon sufficient cause shown, or in refusing to hear evidence pertinent and material to the controversy; or of any other misbehavior by which the rights of any party have been prejudiced; or

(4) where the arbitrators exceeded their powers, or so imperfectly executed them that a mutual, final, and definite award upon the subject matter submitted was not made.

9 USC § 11 provides:

In either of the following cases the United States court in and for the district wherein the award was made may make an order modifying or correcting the award upon the application of any party to the arbitration –

(a) Where there was an evident material miscalculation of figures or an evident material mistake in the description of any person, thing, or property referred to in the award.

(b) Where the arbitrators have awarded upon a matter not submitted to them, unless it is a matter not affecting the merits of the decision upon the matter submitted.

(c) Where the award is imperfect in matter of form not affecting the merits of the controversy.

The order may modify and correct the award, so as to effect the intent thereof and promote justice between the parties.

arbitrator's award is not consistent with Georgia law presents no basis for reversal of the trial court's order affirming the award.

2. Brookfield contends that the effect of the arbitrator's ruling was to add a term to the warranties of title, specifically that the water resources conveyed with the premises were adequate to provide all the water St. James needed to maintain the golf course at the required standard. Because the arbitration provision of the lease limited the arbitrator to applying "the strict terms" of the lease and management agreement, Brookfield contends, the arbitrator overstepped her authority in reading an additional term into the lease. Each of the statutory bases for vacating an arbitration award, including that of overstepping authority, is very limited in scope. A court will vacate an arbitrator's award on the basis that the arbitrator overstepped his or her authority only where the arbitrator determines matters beyond the scope of the case and addresses issues not properly before him or her. *Airtab, Inc. v. Limbach Co.*, 295 Ga. App. 720, 722 (2) (b) (673 SE2d 69) (2009).[8] Because the subject of the arbitration proceeding was Brookfield and St. James's dispute about the construction, meaning or enforceability of the terms of the lease, and the arbitrator resolved that dispute in her award, Brookfield has not shown that the arbitrator addressed an issue not properly before her. *Airtab, Inc. v. Limbach Co.*, 295 Ga. App. at 722 (2); *U. S. Intermodal &c. v. Ga. Pacific Corp.*, 267 Ga. App. 832, 834 (600 SE2d 800) (2004). Accordingly, the record exhibits no overstepping of the arbitrator's authority, and the trial court did not clearly err in confirming the arbitrator's award. *Airtab, Inc. v. Limbach Co.*, 295 Ga. App. at 722 (2); *U. S. Intermodal &c. v. Ga. Pacific Corp.*, 267 Ga. App. at 834.

3. Brookfield contends that, in ruling for St. James, the arbitrator determined that Brookfield breached its warranty of title. Because Georgia law prohibits a tenant from claiming that its landlord breached its warranty of title without first surrendering the premises, and because St. James was still in possession of the premises when it filed its claim, Brookfield contends that the arbitrator manifestly disregarded the law.

In the arbitration context,

> the concept of manifest disregard has never been the equivalent of insufficiency of the evidence or a misapplication of the law to the facts. It is a much narrower standard,

---

[8] See also *U. S. Intermodal &c. v. Ga. Pacific Corp.*, 267 Ga. App. 832, 833 (600 SE2d 800) (2004) (accord); *Haddon v. Shaheen & Co.*, 231 Ga. App. 596, 598-599 (1) (b) (499 SE2d 693) (1998) (accord).

requiring a showing in the record, other than the result obtained, that the arbitrators knew the law and expressly disregarded it. Arbitrators must *deliberately ignore* applicable law to fall within the manifest disregard prohibition in OCGA § 9-9-13 (b) (5).

(Punctuation and footnotes omitted; emphasis in original.) *Airtab, Inc. v. Limbach Co.*, 295 Ga. App. at 722 (2) (a). Further, a finding of manifest disregard of the law requires

(1) that the governing law alleged to have been disregarded is well defined, explicit and clearly applicable[,] and (2) proof that the arbitrator was aware of the law but decided to ignore it. Thus, an error in interpreting the applicable law does not constitute manifest disregard.

(Citations, punctuation and footnote omitted.) *Johnson Real Estate Investments v. Aqua Industrials*, 282 Ga. App. at 640 (1). We have reviewed the authorities Brookfield relied upon and conclude that Brookfield failed to show that defined, explicit, and clearly applicable law prohibits a tenant in possession from challenging the owner's warranty that it had the power to convey all water rights appurtenant to leased premises.[9] It follows that Brookfield further failed to show that the arbitrator was aware of such law but decided to ignore it. Accordingly, the record exhibits no manifest disregard of the law, and the trial court did not clearly err in confirming the arbitrator's award. *Johnson Real Estate Investments v. Aqua Industrials*, 282 Ga. App. at 640.

*Judgment affirmed. Johnson, P. J., and Mikell, J., concur.*

---

[9] See OCGA § 44-7-9 ("The tenant may not dispute his landlord's title or attorn to another claimant while he is in actual physical occupation, while he is performing any active or passive act or taking any position whereby he expressly or impliedly recognizes his landlord's title, or while he is taking any position that is inconsistent with the position that the landlord's title is defective."); *Partain v. King*, 206 Ga. 530 (2) (57 SE2d 617) (1950) ("The tenant is not allowed to dispute his landlord's title without first surrendering possession."); *Bowles v. White*, 206 Ga. 433, 439-440 (1) (e) (57 SE2d 547) (1950) (because a "proceeding brought by a tenant against the administrator of his landlord's estate for the specific performance of a contract of the intestate to devise lands [did] not involve a dispute of the landlord's title, but necessarily amount[ed] to an admission by the tenant that his landlord had title," the tenant could bring suit without first surrendering possession of the premises); *McMurray v. Housworth*, 282 Ga. App. 280, 285-286 (2) (638 SE2d 421) (2006) (although purchasers were not evicted by anyone with paramount title to property they purchased, they could recover from the sellers for a breach of the warranty of freedom from encumbrances); *Whited v. Issenberg*, 261 Ga. App. 787, 788 (584 SE2d 59) (2003) (purchaser of land could not recover from sellers for breach of the covenant for quiet enjoyment, where the evidence failed to show that the purchaser had been compelled to yield to an outstanding paramount title).

DECIDED JULY 16, 2009 —
RECONSIDERATION DENIED AUGUST 7, 2009 

*Bryan, Cave, Powell & Goldstein, William V. Custer IV, Jennifer B. Dempsey,* for appellant.

*Rogers & Hardin, John J. Almond, Joshua P. Gunnemann,* for appellee.