S09G2081. BROOKFIELD COUNTRY CLUB, INC.
v. ST. JAMES-BROOKFIELD, LLC.
(696 SE2d 663)

THOMPSON, Justice.

Appellant Brookfield Country Club, Inc. (Brookfield) appealed to the Court of Appeals from an order of the trial court denying its application to partially vacate an arbitrator's award, and granting a cross-application brought by appellee St. James-Brookfield, LLC (St. James) to affirm the award. The Court of Appeals affirmed the ruling of the trial court. *Brookfield Country Club v. St. James-Brookfield,* 299 Ga. App. 614 (683 SE2d 40) (2009). We granted certiorari to review that decision. For the reasons that follow, we affirm.

Brookfield is a non-profit corporation established in 1991 to own and operate a country club in Roswell. During its first nine years, Brookfield operated the club's golf course, drawing water to irrigate the golf course from [Lake Stanford,] a man-made lake on the property. The Georgia Water Quality Control Act, OCGA § 12-5-20 et seq., which governs the use of Georgia's surface waters, requires a permit from the Environmental Protection Division of the Department

of Natural Resources before any withdrawal or diversion of surface waters, including the lake on Brookfield's property. OCGA § 12-5-31 (a). Although OCGA § 12-5-31 (a) (1) (A) provides an exception to the permit requirement for withdrawals that do not involve more than 100,000 gallons per day on a monthly average, the amount of water required to maintain Brookfield's golf course far exceeds that limit. Brookfield never obtained the required permit.

*Brookfield Country Club*, supra at 614.

In 2000 Brookfield leased the country club property to St. James pursuant to a long-term lease and an incorporated management agreement (the lease). Brookfield warranted in the lease that it has fee simple title to the premises, not subject to any leases or claims of others, except for certain specified exceptions, and it covenanted to defend St. James' possession of the premises against all parties claiming under Brookfield. Incorporated into the lease was a "Premises Description" which contained a legal description of the property, and included as part of the premises "water, water courses, water rights . . . and other enablements [then] located on, under or above all or any portion of the Land or appurtenant thereto."

The terms of the lease also required the parties to submit all disputes "to negotiation and, if necessary mediation and arbitration." That arbitration provision specified that the arbitrator be bound by the strict terms of the lease and also provided for court vacatur of the arbitrator's award "if the court finds the arbitrator's award is not consistent with applicable law or not supported by a preponderance of the evidence . . . all in addition to grounds for vacation of an award as set forth in the Georgia Arbitration Code [OCGA § 9-9-1 et seq. (Arbitration Code)]." The lease further specified that in case of conflict between the lease provisions and the Arbitration Code, "the provisions of the lease shall control."

When St. James discovered that Brookfield had not obtained a permit from the DNR for the withdrawal of water sufficient to irrigate the golf course, and attempts to resolve the issue failed, St. James filed a demand for arbitration. St. James alleged in its pleadings that Brookfield warranted it owned Lake Stanford and the water therein and that it had unrestricted right and power to use that water for irrigation purposes; but that water withdrawal from Lake Stanford is governed by the Georgia Surface Water Use Act (the Act). St. James sought a declaration that Brookfield breached the warranty of ownership by its "failure to have obtained the necessary permit for the use of water from a lake on the club premises," and that such constituted an event of default. St. James sought compensation for "all costs of obtaining the necessary surface water with-

drawal permit and of operating the irrigation system in compliance therewith."

Brookfield filed a response and counter-demand asserting that the lease contains no "promise representation or warranty as to the water that will be available to [St. James]," and places the burden of those obligations on St. James, including the obligation to obtain the necessary permit regarding water usage under the Act.

After a hearing, the arbitrator granted St. James' request for relief finding that Brookfield's failure to secure the required permit under the Act was a breach of the lease and constituted an event of default; it denied relief on the counter-demand. Brookfield filed a motion for reconsideration which the arbitrator denied.

A subsequent hearing was held to determine which party had the financial obligation to secure an EPD permit and related costs. The arbitrator ordered Brookfield to bear the costs of obtaining the EPD permit and securing a low-flow protection plan, a procedure required in conjunction with the granting of a permit for surface water withdrawals; and ordered St. James to pay other costs necessary to fulfill its obligations under the lease.

Brookfield filed an application in the superior court to partially vacate the arbitrator's award, denying that it was in breach of the lease, and contending the arbitrator overstepped her authority by failing to abide by the strict terms of the arbitration clause. Brookfield also argued that judicial review should conform to the standard in the agreement, providing for court vacatur if the arbitrator's award is not consistent with applicable law. St. James filed a cross-motion to confirm the award. The trial court confirmed the award in its entirety and entered judgment thereon.

Brookfield appealed to the Court of Appeals, asserting once again that the arbitrator's award is inconsistent with Georgia law, and that the arbitrator overstepped her authority and manifestly disregarded applicable law. The Court of Appeals rejected each enumerated error and affirmed the arbitrator's award, reasoning: "a trial court is, and we are, limited to considering the statutory grounds for vacatur, despite any additional grounds included in a contract that provides for arbitration of disputes." *Brookfield*, supra at 619 (1).

1. The pivotal question presented by this case is whether parties to an arbitration agreement may by contract modify the scope of the trial court's review of an arbitrator's award to include grounds for vacatur that are not set forth in the Arbitration Code. This issue presents two countervailing legal concepts — the rights of parties to set the terms of their contract, against the firmly established principle that the expansion of judicial review of arbitration awards beyond that created by statute would frustrate the "expeditious and

final resolution of disputes by means that circumvent the time and expense associated with civil litigation." *Greene v. Hundley*, 266 Ga. 592, 597 (3) (468 SE2d 350) (1996). See also *Hardin Constr. Group v. Fuller Enterprises*, 265 Ga. 770, 771 (462 SE2d 130) (1995) ("the role of the trial court should be limited so that the purpose of avoiding litigation by resorting to arbitration is not frustrated").

OCGA § 9-9-13 (b) of the Arbitration Code sets forth five statutory grounds for vacating an arbitration award upon the application of a party subject to the award, as follows:

> The award shall be vacated on the application of a party who either participated in the arbitration or was served with a demand for arbitration if the court finds that the rights of that party were prejudiced by:
>
> (1) Corruption, fraud, or misconduct in procuring the award;
>
> (2) Partiality of an arbitrator appointed as a neutral;
>
> (3) An overstepping by the arbitrators of their authority or such imperfect execution of it that a final and definite award upon the subject matter submitted was not made;
>
> (4) A failure to follow the procedure of this part, unless the party applying to vacate the award continued with the arbitration with notice of this failure and without objection; or
>
> (5) The arbitrator's manifest disregard of the law.

Our appellate courts have consistently found that the statutory grounds for vacatur enumerated in OCGA § 9-9-13 (b) are the exclusive means by which a court may vacate an arbitration award. See, e.g., *Greene*, supra at 595 (1) ("[t]he Arbitration Code requires a trial court to confirm an award upon the timely application of a party to the award, unless one of the statutory grounds for vacating or modifying the award is established"); *Johnson Real Estate Investments v. Aqua Industrials*, 282 Ga. App. 638 (1) (639 SE2d 589) (2006) and *Ralston v. City of Dahlonega*, 236 Ga. App. 386 (1) (512 SE2d 300) (1999) (statutory grounds provide exclusive bases for vacating arbitration award). "The Arbitration Code demands that courts give extraordinary deference to the arbitration process and awards." *Scana Energy Marketing v. Cobb Energy Mgmt. Corp.*, 259 Ga. App. 216, 221 (2) (576 SE2d 548) (2002). Thus, courts are "severely limited" in vacating an arbitration award so as " 'not to frustrate the legislative purpose of avoiding litigation by resort to arbitration.' " Id. As the Arbitration Code is in derogation of the common law, it must be strictly construed. *Greene*, supra at 595 (1).

With these principles in mind we consider whether the statutory grounds for vacatur may be expanded by contract, an issue addressed for the first time in Georgia in *Brookfield*, supra. "Because our state arbitration code closely tracks federal arbitration law, we look to federal cases for guidance in construing our own statutes." *ABCO Builders v. Progressive Plumbing*, 282 Ga. 308, 309 (647 SE2d 574) (2007). In *Hall Street Assoc. v. Mattel*, 552 U. S. 576 (128 SC 1396, 170 LE2d 254) (2008), the United States Supreme Court considered whether the grounds for vacatur and modification of arbitration awards set forth in the Federal Arbitration Act (FAA), 9 USC § 1 et seq., are exclusive, or whether they can be modified by contract. The Court resolved a split among the federal circuits by holding that §§ 10 and 11 of the FAA, listing grounds for vacating an arbitration award and those for modifying or correcting one, are the exclusive grounds for such action.

Georgia's Arbitration Code demands that a "court shall confirm an award upon application of a party . . . unless the award is vacated or modified by the court as provided in this part." OCGA § 9-9-12. See also *Hardin Constr.*, supra at 771 ("a party seeking confirmation of an arbitration award is entitled to confirmation unless the trial court vacates or modifies the award pursuant to the specific statutory grounds"). The federal statute has a similar provision. Under 9 USC § 9, a court "must" confirm an arbitration award "unless" it is vacated, modified, or corrected "as prescribed" in the FAA. As the Court observed in *Hall Street*, to allow contractual expansion of §§ 10 and 11,

> would rub too much against the grain of the § 9 language, where provision for judicial confirmation carries no hint of flexibility. . . . There is nothing malleable about "must grant," which unequivocally tells courts to grant confirmation in all cases, except when one of the "prescribed" exceptions applies. This does not sound remotely like a provision meant to tell a court what to do just in case the parties say nothing else.

Id. 552 U. S. at 587. In similar fashion, this language can be applied to the mandatory feature of OCGA § 9-9-12, which directs the court to confirm an award unless the statutory grounds for vacatur are established.

While *Hall Street* is not dispositive of the scope of judicial review available under state law, the vast majority of states have followed its

lead.[1] Having examined the reasoning and logic of *Hall Street* and the decisions of other courts adopting its rationale, we find those cases to be consistent with the statutory and interpretative law of this state, and therefore persuasive. We also reiterate that arbitration in this state is no longer governed by common law, but is wholly a creature of statute, and thus it is the role of the legislature, not this Court, to augment any fundamental changes in the nature of the proceeding. Here the parties' decision to arbitrate grievances expresses their intent to by-pass the judicial system and thus avoid potential delays at the trial and appellate levels.

Although we acknowledge the fundamental principle that parties have the right to freely contract, courts may not enforce a contractual provision which contravenes the statutory law of this state. See generally *Richard Bowers & Co. v. Creel*, 280 Ga. App. 199 (1) (633 SE2d 555) (2006). Thus, as the Court of Appeals correctly reasoned in *Brookfield*, supra at 617 (1), "the Arbitration Code does not permit contracting parties who provide for arbitration of disputes to contractually expand the scope of judicial review that is authorized by statute." "Any other reading opens the door to the full-bore legal and evidentiary appeals that can 'rende(r) informal arbitration merely a prelude to a more cumbersome and time-consuming judicial review process,' [cits.], and bring arbitration theory to grief in post-arbitration process." *Hall Street*, supra 552 U. S. at 588.

2. Brookfield's contention that the arbitrator overstepped her authority under OCGA § 9-9-13 (b) (3) by failing to abide by the expanded grounds for vacatur under the terms of the lease is resolved in favor of St. James by our ruling in Division 1. With respect to Brookfield's additional assertions that the arbitrator's award should be vacated under OCGA § 9-9-13 (b) (3) and (b) (5), we hold that the Court of Appeals properly applied the law to the facts of this case and we find no error.

3. Finally, Brookfield argues that the provisions of the arbitration agreement are not severable, and if this Court should invalidate the agreement in part, the entire arbitration agreement must fall. First, as far as the record shows, this issue was not ruled on by the trial court or by the arbitrator. "Issues which have not been ruled on by the trial court may not be raised on appeal." *Ga. Dept. of Natural Resources v. Coweta County*, 261 Ga. 484 (405 SE2d 470) (1991). In

---

[1] See, e.g., *Pugh's Lawn Landscape Co. v. Jaycon Dev. Corp.*, 2009 WL 1099270 (Tenn. Ct. App.); *Feeney v. Dell, Inc.*, 2008 WL 1799954 (Mass. Super.); *Morrow v. Hallmark Cards, Inc.*, 273 SW3d 15 (Mo. App. 2008); *Quinn v. Nafta Traders*, 257 SW3d 795 (Tex. App. 2008); *Matter of Johnson (Summit Equities, Inc.)*, 864 NYS2d 873 (N.Y. Sup. 2008). California, however, is in the distinct minority in rejecting *Hall Street*'s reasoning. See *Cable Connection v. DIRECTV*, 44 Cal.4th 1334 (190 P3d 586) (2008).

addition, it does not appear that the issue was squarely raised in the Court of Appeals, and it unquestionably was not addressed in that court's opinion. As neither occurred, this issue is not properly before the Court. See *Security Life Ins. Co. of America v. St. Paul Fire & Marine Ins. Co.*, 278 Ga. 800, 802 (2) (606 SE2d 855) (2004).

*Judgment affirmed. All the Justices concur.*

DECIDED JUNE 28, 2010.

*Powell Goldstein, William V. Custer IV, Jennifer B. Dempsey, Parks, Chesin & Walbert, Allan L. Parks, Jr., Larry Chesin*, for appellant.

*Rogers & Hardin, John J. Almond, Joshua P. Gunnemann*, for appellee.