**FIRST DIVISION
BARNES, P. J.,
LAND and WATKINS, JJ.**

**NOTICE: Motions for reconsideration must be
*physically received* in our clerk's office within ten
days of the date of decision to be deemed timely filed.
https://www.gaappeals.us/rules**

**November 3, 2023**

# In the Court of Appeals of Georgia

A23A0790. NIX v. SCARBROUGH.

BARNES, Presiding Judge.

We granted Lucy Bedelle Nix's application for discretionary review of the trial court's final judgment and decree of divorce from her husband, Frank Eugene Scarbrough. On appeal, Nix asserts that the trial court erred by compelling arbitration after Scarbrough substantively breached the arbitration agreement, and erred by confirming and adopting the arbitrator's award. Upon review, we affirm the judgment of the trial court.

Scarbrough and Nix, the parents of two, at the time of this action, teenage boys, were married in 1998. Scarbrough filed a complaint for divorce on July 10, 2019, and Nix answered and filed a counterclaim for divorce. On January 27, 2020, the couple, who were then separated, entered into an Arbitration and Interim Agreement ("the

Agreement") providing that they would "resolv[e] all issues of child custody and visitation, property division, support, and all of the matters arising out of the marriage of the parties, and the dissolution of that marriage by submitting the same to arbitration." The Agreement further provided that the parties would forgo the scheduled temporary hearing and "all noticed depositions and [would] submit to arbitration within the month of March." It was also agreed that the Arbitrator would "arbitrate all matters attendant to this divorce action." Additional interim provisions in the Agreement assigned responsibility for ongoing expenses, including school expenses, mortgages, and car payments.

Additionally, the Agreement included the following provision:

**Encumberances.** The Husband may draw on the variable life insurance policy for the limited purpose of paying the premiums for the insurance policies, and the parties recognize that the Wife is not waiving her right to seek reimbursement of these funds or an accounting for the same as part of the equitable distribution to be adjudicated at arbitration. Similarly, the Wife may draw on the LBN account as necessary to make repairs to the Waters Avenue property. *Except as otherwise stated herein, neither party shall draw down, borrow against, or otherwise encumber or encroach upon any marital assets pending arbitration.* (Emphasis supplied.)

2

The parties originally planned to arbitrate their case on March 23 and 24, 2020, but it was delayed until October 27, 28, and 30 of 2020.[1] The Arbitrator partially attributed the delay to Nix, and although she recognized the legitimacy of health concerns relating to the pandemic, noted that Nix had taken advantage of the pandemic to delay moving the divorce proceedings forward, and that Nix had "felt there was no advantage to her in concluding this divorce."

Before the arbitration could be held, on March 30, 2020, Scarbrough's partnership with his oral surgery practice was terminated and he accepted a buy-out of his shares for $1,000. He had been earning more than $50,000 per month, but his partners insisted that he either resign or be terminated . Nix also alleged that Scarbrough had received money from refinancing one of the real properties in the marital estate. Nix resisted moving forward with arbitration, and expressed that Scarbrough's transactions had breached certain provisions in the Agreement, and thus the Agreement was no longer binding.

---

[1] According to the Arbitrator, the dates were set without knowledge of the impending COVID pandemic, but on March 18, 2020, Nix's counsel sent a letter to the Arbitrator cancelling the arbitration "citing health concerns for all involved." On March 14, 2020, the Georgia Supreme Court entered the first of a series of orders declaring a Statewide Judicial Emergency in response to the COVID-19 pandemic. See the Chief Justice's Orders at https://www.gasupreme.us/court-information/court_corona_info/.

Thereafter, in July 2020, Scarbrough filed a "Motion to Stay and Refer All Pending Matters for Arbitration," and requested that the trial court

> stay further proceedings in this case related to "all issues of child custody and visitation, property division, support, and all of the matters arising out of the marriage of the parties and the dissolution of the marriage" pursuant to their Agreement and defer to the arbitrator on all further rulings related thereto."

According to Scarbrough, even Nix's assertion that Scarbrough had waived arbitration because of his alleged failure to comply with certain interim provisions in the Agreement, "is a matter that grows out of the parties' underlying dispute and is, therefore, for the arbitrator rather than the Court to resolve." Nix objected, requested that the Agreement be declared void, and argued that Scarbrough had waived his right to arbitration by dissipating the marital estate in violation of the parties' Agreement. She further asserted that such "prohibition against dissipation of marital assets was clearly a significant part of the consideration for the contract for arbitration." Nix maintained that the consequences of the breach of the Agreement were not reserved for the arbitrator's determination.

The trial court concluded the contrary and granted Scarbrough's motion and referred all pending matters in the case to arbitration. The trial court held that

[g]ateway issues of substantive arbitrability, such as allegations of conduct-based waiver of arbitration rights are generally decided by the trial court. . . . Procedural questions which grow out of the dispute and bear on its final disposition are presumptively not for the judge, but for an arbitrator, to decide. The issue of the alleged breach relates to the dispute itself which is the dissolution of the marriage and if true, ultimately affects the distribution of the property despite the fact that it is alleged to be a violation of the arbitration agreement itself. Moreover, the parties agreed to arbitrate all matters arising out of the marriage and property division. As this is an issue growing out of the dispute and pursuant to the parties' agreement, the Court finds this is an issue for the arbitrator rather than the trial court to decide.

(Citations, punctuation, and footnotes omitted.) Nix did not object, and the arbitration was conducted on October 27, 28, and 30, 2022. Thereafter, the arbitrator entered an extensive 77-page arbitration award, which covered in great detail, the division of marital assets and value thereof, the net value of the marital estate, the division of the marital estate, income of both parties for purposes of child support and spousal support, whether spousal support should be awarded, custody and visitation for the parties' two minor children, and child support. Scarbrough filed a motion to confirm arbitration award, and Nix objected to the confirmation and asserted that the Arbitrator manifestly disregarded the law, and was not impartial, but rather was

5

biased toward Scarbrough. The trial court confirmed the Arbitrator's award, "having carefully reviewed the Arbitration Award, and considered [Nix's] Objections, [Scarbrough's] Response, [Scarbrough's] Motion, and the applicable law." The award was incorporated into the final divorce decree, and this appeal ensued.

1. Nix argues that the trial court erred by forcing her to arbitrate the case after Scarbrough breached the Agreement. She contends that the provision barring the parties from dissipating the marital estate pending arbitration was a material term of the parties' Agreement, and that, because Scarbrough breached that term, the trial court should have proceeded with a jury trial. Nix cites Scarbrough's relinquishment of his ownership interest in his dental practice for much less that its actual value, and refinancing one of the marital real properties to borrow money as the specific breaches of the Agreement. We are not persuaded.

We review a trial court's order granting or denying a motion to compel arbitration de novo. *Miller v. GGNSC Atlanta*, 323 Ga. App. 114, 117 (1) (746 SE2d 680) (2013). Additionally, "[t]he construction of an arbitration agreement, like any other contract, presents a question of law, which is subject to de novo review." (Citation and punctuation omitted.) *Order Homes v. Iverson*, 300 Ga. App. 332, 333 (685 SE2d 304) (2009). See *United Health Svcs. of Ga. v. Alexander*, 342 Ga. App.

6

1, 2 (2) (802 SE2d 314) (2017) ("Arbitration is a matter of contract, meaning that arbitrators derive their authority to resolve disputes only from the parties' agreement.") (citation and punctuation omitted).

"The limits of an arbitrator's authority are defined by the parties' arbitration agreement." *Henderson v. Millner Developments*, 259 Ga. App. 709, 711 (1) (578 SE2d 289) (2003). Moreover,

> an arbitrator is bound by the terms of the parties' agreement in crafting his award. An arbitrator imperfectly executes his or her authority where there is a significant failure to fully and clearly address the issues presented, and whether there has been such a failure turns on what the parties' arbitration agreement required of the arbitrator.

(Citations and punctuation omitted.) *King v. King*, 354 Ga. App. 19, 25 (2) (b) (840 SE2d 108) (2020).

To that end, while "gateway issues of substantive arbitrability, such as allegations of conduct-based waiver of arbitration rights, are generally decided by the trial court[,] . . . procedural questions which grow out of the dispute are generally for the arbitrator to decide." (Citations and punctuation omitted.) *Web IV, v. Samples Constr.*, 349 Ga. App. 607, 610 (1) (a) (824 SE2d 107) (2019). See *Archer W. Contractors v. Holder Constr. Co.*, 325 Ga. App. 169, 175 (3) (751 SE2d 908) (2013)

7

(recognizing that "procedural questions which grow out of the dispute" are generally for the arbitrator to decide and that an "arbitrator shall decide whether a condition precedent to arbitrability has been fulfilled, and where the parties have not explicitly agreed otherwise, prerequisites such as time limits, notice, laches, estoppel, and other conditions precedent to an obligation to arbitrate are for the arbitrators to decide" ) (citations, punctuation, and emphasis omitted.) (physical precedent only).

In its order granting Scarbrough's motion to stay and refer all pending matters to arbitration, the trial court considered Nix's contention that Scarbrough had breached the Agreement by borrowing money from the refinancing of marital real property and by selling his dental practice for $1000, and whether such actions were conduct-based such that it would be a matter for the trial court. The trial court concluded, among other things, that "[t]he issue of the alleged breach relates to the dispute itself which is the dissolution of the marriage and if true, ultimately affects the distribution of the property despite the fact its is alleged to be a violation of the arbitration agreement itself."[2]

---

[2] The trial court likewise found that even if Scarbrough's alleged breach of the Agreement was a matter for the trial court, there was no basis for finding the agreement "void based on [Scarbrough's] alleged conduct based waiver."

8

We agree with the trial court that the alleged breach is not a gateway issue related to arbitrability, but rather a procedural matter related to provisions in the Agreement, and as such, for the Arbitrator to decide. Significantly, the Agreement specified that "all issues of child custody and visitation, property division, support, and all of the matters arising out of the marriage of the parties" would be submitted to arbitration. Likewise, the Agreement provided that the Arbitrator would decide anything related to "the dissolution of that marriage." Not only does the dispute as to whether Scarbrough's sale of his share of the dental surgery practice and refinancing of real property to borrow money impact matters related to property division, but it also presents a procedural inquiry into whether such actions violated the encumbrances provision of the Agreement – both of which were contemplated in the Agreement as "matters arising out of the marriage" or related to the "dissolution of that marriage."

Given the foregoing, the issue of whether Scarbrough's actions breached the encumbrance provision of the Agreement was a matter for the Arbitrator to decide, and accordingly, Nix's attendant contention that the trial court erred in compelling arbitration fails.

9

2. Nix also contends that the trial court erred by confirming the arbitration award because the arbitrator was biased, imperfectly executed her duty, and manifestly disregarded the law.

It is well-established that once an arbitration award is issued, a court can only alter or vacate the award in limited circumstances. See *Greene v. Hundley*, 266 Ga. 592, 595 (1) (468 SE2d 350) (1996). According to OCGA § 9-9-13 (b),

> The award shall be vacated on the application of a party who either participated in the arbitration or was served with a demand for arbitration if the court finds that the rights of that party were prejudiced by: (1) Corruption, fraud, or misconduct in procuring the award; (2) Partiality of an arbitrator appointed as a neutral; (3) An overstepping by the arbitrators of their authority or such imperfect execution of it that a final and definite award upon the subject matter submitted was not made; (4) A failure to follow the procedure of this part, unless the party applying to vacate the award continued with the arbitration with notice of this failure and without objection; or (5) The arbitrator's manifest disregard of the law.

The burden is on the party attempting to vacate the award to demonstrate the existence of a statutory ground for vacating. *Greene*, 266 Ga. at 596 (3) n. 24. "In deciding whether to confirm or vacate an arbitration award, a trial court's role is severely curtailed so as not to frustrate the purpose of avoiding litigation."

10

(Punctuation omitted.) *Brookfield Country Club v. St. James- Brookfield, LLC*, 299 Ga. App. 614, 617 (1) (683 SE2d 40) (2009). "In reviewing a trial court's order confirming an arbitration award, this Court will affirm unless the trial court's ruling was clearly erroneous. However, we review the trial court's resolution of questions of law de novo." (Citations and punctuation omitted.) *Brooks v. Brooks*, 366 Ga. App. 650, 650 (883 SE2d 880) (2023).

(a) In support of her claim that the arbitrator was biased in favor of Scarbrough, Nix contends that the arbitrator unfairly assigned fault to her, minimized family violence perpetrated by Scarbrough against the parties' younger son, and failed to account for Scarbrough's "malfeasance" when dividing the marital estate. But "[m]erely pointing to adverse factual and legal findings cannot sustain an allegation of bias" for purposes of OCGA § 9-9-13 (b) (2). *Faiyaz v. Dicus*, 245 Ga. App. 55, 58-59 (3) (537 SE2d 203) (2000). Here, Nix, has only identified factual findings with which she disagrees.

(b) Nix also contends that the Arbitrator imperfectly executed her duty, in that, among other things, the Arbitrator failed to account for Scarbrough's breach of the parties' Agreement and depletion of the estate when dividing the marital property, that the Arbitrator's custody award does not serve the best interests of the children,

11

and that the child support award was inaccurate because the parties' children no longer attend private school. However, this Court will not entertain arguments made for the first time on appeal. "Issues presented for the first time on appeal furnish nothing for us to review, for this is a court for correction of errors of law committed by the trial court where proper exception is taken. Nor may [Nix] alter the course of [her] arguments mid-stream, raising issues on appeal that were not raised before the trial court." (Citation and punctuation omitted.) *Pinnacle Properties V, v. Mainline Supply of Atlanta*, 319 Ga. App. 94, 100 (2) (735 SE2d 166) (2012). In contesting the arbitration award, Nix only asserted that the Arbitrator manifestly disregarded the law and had exhibited favorable bias toward Scarbrough. Thus, this contention presents nothing for our review.

(c) Nix also claims that the Arbitrator manifestly disregarded the law. Nix contends that the Arbitrator erred by classifying a certain account as separate rather than marital property, by awarding her a minority interest in property that is jointly owned by other investors who were not made parties to the divorce proceeding, and by using net income, rather than gross income, to complete the child support worksheet. Nix also contends the Arbitrator failed to "follow the rules of evidence,"

12

after which she provides a string of record citations, purportedly illuminating such failure, but not specifically indicating what in the record cites were evidentiary errors.

> [T]he concept of manifest disregard has never been the equivalent of insufficiency of the evidence or a misapplication of the law to the facts. It is a much narrower standard, requiring a showing in the record, other than the result obtained, that the arbitrators knew the law and expressly disregarded it. Arbitrators must deliberately ignore applicable law to fall within the manifest disregard prohibition in OCGA § 9-9-13 (b) (5). Further, a finding of manifest disregard of the law requires (1) that the governing law alleged to have been disregarded is well defined, explicit and clearly applicable, and (2) proof that the arbitrator was aware of the law but decided to ignore it. Thus, an error in interpreting the applicable law does not constitute manifest disregard.

(Citations, punctuation, and emphasis onitted.) *Brookfield Country Club*, 299 Ga. App. at 620-621 (3). See *Adventure Motorsports Reinsurance v. Interstate Nat. Dealer Svcs.*, 313 Ga. 19, 28 (1) (867 SE2d 115) (2021) (noting that "[h]owever imperfect . . . the arbitrator's understanding or application of the law [may have been judged] to have been, such a failure by the arbitrator does not amount to concrete evidence of a deliberate decision not to apply the applicable law in making the arbitration award"); *America's Home Place v. Cassidy*, 301 Ga. App. 233, 236 (2) (687 SE2d 254) (2009) (reversing an order denying a motion to confirm an arbitration

13

award because the appellants did not point to any concrete evidence that the arbitrator intentionally ignored the language of the pertinent contract or applicable law). Thus, a "party wishing to have an arbitration award vacated must provide evidence of record that, not only was the correct law communicated to an arbitrator, but that the arbitrator intentionally and knowingly chose to ignore that law despite the fact that it was correct." (Citations and punctuation omitted.) *Brooks*, 366 Ga. App. at 655 (2) (a).

Here the instances of what Nix alleges are errors in applying the law, do not establish manifest disregard, as "[m]ere error in law or failure on the part of the arbitrator to understand or apply the law does not amount to deliberately disregarding the law in order to reach the result the arbitrator reached."(Citation and punctuation omitted.) *Adventure Motorsports*, 313 Ga. at 26 (1).

Nix asserts that the Arbitrator ignored the law regarding joinder of third parties when necessary for the distribution of marital properties. Our review, however, reveals that rather than ignoring the law of the joinder of necessary parties, the Arbitrator was concerned with the fact that Nix was being awarded, as an asset, Scarbrough's minority interest in a partnership with two of his friends. Although concerned that Nix would be in a partnership with strangers, the Arbitrator opined

14

that the minority interest had the potential to be very profitable for Nix. While, "third parties are properly joined in a divorce action so as to facilitate resolution of the spouses' marital claims," *Brown v. Brown*, 271 Ga. 887, 888 (525 SE2d 359) (2000), there was no issue raised before the Arbitrator about the joinder of third parties, such that she then deliberately disregarded the law.

Likewise we find no merit in Nix's contention that the Arbitrator ignored the Georgia statutory child support guidelines in calculating child support by using net income rather than gross income. Nix cites to the portion of the arbitration award reflecting the Arbitrator's decision about child support. There, the Arbitrator indicated that she had reviewed the income worksheets submitted by the parents, and thereafter determined that she was not awarding child support to either parent.[3] We ascertain nothing in that portion of the award evincing the Arbitrator's manifest disregard of law. Moreover,

> [a]n arbitrator has inherent power to fashion a remedy as long as the award draws its essence from the contract or statute. Additionally, the Georgia Arbitration Code specifically states that merely because the relief granted in the arbitration award could not or would not be granted

---

[3] Each son elected to stay with a different parent.

by a court of law or equity is not ground for vacating or refusing to confirm an award.

(Citations and punctuation omitted.) *Wells v. Wells-Wilson*, 360 Ga. App. 646, 666 (5) (a) (860 SE2d 185) (2021).

Upon review of Nix's asserted errors Nix has failed to make a concrete showing of deliberate disregard of the law by the Arbitrator, and thus this enumeration fails. See *ABCO Builders v. Progressive Plumbing*, 282 Ga. 308, 309 (647 SE2d 574) (2007) (while noting that a showing of manifest disregard "is an extremely difficult one to make[,]" the Court offered an example of an appropriate situation for such a finding, which had "occurred only because the arbitration award itself made an explicit recital of the winning party's argument that the correct law should be ignored rather than followed. In that case, proof of a manifest disregard of the law was blatantly evident on the face of the award. In any other case, similarly clear evidence of the arbitrator's intent to purposefully disregard the law is required").

Based on the foregoing, we find that the trial court did not err in confirming the arbitration award.

*Judgment affirmed. Land and Watkins, JJ., concur.*

16